434 So.2d 1328 (1983)
William E. ANDREWS, III, and Kent F. Hudson, Appellants,
v.
The LAKE SERENE PROPERTY OWNERS ASSOCIATION, INC., a Non-Profit Corporation; Gerald P. Achee and Charlotte C. Achee; Milam S. Cotten and Betty F. Cotten; George A. Byrnes and Marion Byrnes; Nicholas John Fokakis; Michael P. Frye; Glenn Terry Harper and Gail B. Harper; John Kilcullen, Jr., and Patricia J. Kilcullen; J. Gary McGregor and Renate L. McGregor; Mrs. Muriel McCarty Palazzo; Selby Parker; Amnnfred A. Passman and Kathleen Ann Passman; A.J. Richards a/k/a Alexis J. Richards and Mary I. Richards; Phillip Randell Rogers; Hiram W. Sumrall and Charline M. Sumrall; William West Tatum, Jr.; Samuel H. Tisdale and Alice H. Trigg; and E.R. Trussell and Sallye Lou W. Trussell, Appellees.
No. 54243.
Supreme Court of Mississippi.
July 20, 1983.
Rehearing Denied August 10, 1983.
*1329 S. Robert Hammond, Jr., Jackson, Hammond, Sellers & Guest, Hattiesburg, for appellants.
James H.C. Thomas, Jr., Hattiesburg, for appellees.
Before PATTERSON, C.J., and ROY NOBLE LEE and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
The meaning of the term "lot" in protective covenants, as amended, for Unit Two of the Lake Serene Subdivision in Lamar County, Mississippi, is at the core of this civil dispute.
William E. Andrews, III, and Kent F. Hudson own three lots which are part of a 15 lot resubdivision of the original Lots 83 and 84 of Unit Two of Lake Serene. Andrews and Hudson, Complainants below, are Appellants here. They contend that the protective covenants permit construction of a single dwelling on each such resubdivided lot, provided, of course, that all other protective and restrictive covenants are complied with.
The Lake Serene Property Owners Association, Inc., Appellee here, argues for a contrary construction of the covenants. The property owners association contends that the restriction of one single family dwelling per lot refers to the original Lots 83 and 84, not to the resubdivision which has brought into existence 15 smaller lots instead of two very large lots.
After plenary trial on the merits and a careful consideration of the issues involved, the Chancery Court found an "ambiguity" within the covenants relating to the minimum size of lots in Lake Serene, notwithstanding, the Chancery Court held that the covenants should be construed to provide that no more than one single family dwelling may be constructed on original Lot 83 and no more than one single family dwelling may be constructed on original Lot 84. Andrews and Hudson have appealed from this ruling. Believing that the Chancellor erred in his resolution of the underlying question of law involved in this case, we reverse. We hold that Lots 6, 7 and 13 of the Lakeview Subdivision are separate lots within the meaning of the restrictive covenants applicable thereto.

II.
Lake Serene is a residential subdivision located on Highway 98 a few miles west of Hattiesburg but in Lamar County, Mississippi. Unit Two of the entire Lake Serene Subdivision has its own separate plat and its own separate protective covenants. The original plat of Unit Two was filed for record in April of 1965. Lot 83 of Unit Two, as originally platted, consisted of 3.74 acres. Lot 84 of Unit Two consisted of 5.165 acres.
On June 3, 1965, the original protective covenants for Unit Two were filed for record. Those original covenants provided in pertinent part as follows:
"3. LAND USE & BUILDING TYPE:
No lot shall be used except for the construction of a dwelling... ."
* * * * * *

*1330 "6. LOT AREA & WIDTH: No dwelling shall be erected or placed on any lot having a width of less than 50 feet at the minimum building setback line nor shall any dwelling be erected or placed on any lot having an area of less than 17,500 square feet."
The word "lot" was not specifically defined. Further, no provision of the protective covenants prohibited resubdivision of the original lots of Unit Two.
On April 25, 1968, the developers of Lake Serene conveyed original Lots 83 and 84 to one Herbert Slay. Less than four months later, on August 13, 1968, to be specific, Slay and his partner W.J. Mims caused to be duly filed for record a plat of the Lakeview Subdivision. This Lakeview Subdivision effected a resubdivision of Lots 83 and 84 of Unit Two. The two large lots were divided into 15 smaller lots, each still having an area of at least 20,000 square feet.
On May 2, 1973, the protective convenants for Unit Two of Lake Serene were amended. The pertinent provisions of the amended covenants are as follows:
"1. Lots 1 through 11 inclusive and Lots 20 through 98 in said Unit Two of Lake Serene Subdivision shall be known and described as residential lots and no other structure shall be erected, altered or permitted to remain on any of said residential building lots other than one single family dwelling with appurtenant out buildings."
* * * * * *
"5. LOT & AREA WIDTH: No single family dwelling shall be erected or placed on any lot having width of less than fifty feet (50') at the minimum building setback line nor shall any dwelling be erected or placed on any lot having an area less than twenty thousand square feet (20,000 sq. ft.)."
Once again, the protective covenants contained no prohibition against subdivision of lots.
By instrument dated May 2, 1973, and filed for record on June 12, 1973, the protective covenants on Unit Two were extended.[1] This instrument contained the following pertinent language:
"The original protective covenants and building restrictions on Unit Two, Lake Serene Subdivision, Lamar County, Mississippi, shall be extended for a term of eight years and shall be covenants which are to run with the land... ."
On May 15, 1974, the State of Mississippi duly chartered a nonprofit organization denominated The Lake Serene Property Owners Association, Inc. The Association is a voluntary one composed of owners of property within Units 1, 2, 3, 4, 5 and 6 of the entire Lake Serene Development. This is the property owners association which is the appellee here.
This litigation involves only three of the 15 lots in the Lakeview Subdivision, which, as explained above, is a resubdivision of Lots 83 and 84 of Unit Two of Lake Serene. In November of 1977, these three lots were acquired by appellants Andrews and Hudson.
Prior to the advent of this civil action, a single family dwelling was constructed on Lot 1 of Lakeview Subdivision which is a part of the original Lot 84. Another single family dwelling was constructed on Lot 8 of Lakeview Subdivision which is carved out of the original Lot 83. Thus, in a very real sense, at the time the instant controversy arose, there was existing on the land, which was the original Lot 83, one single family residential dwelling. Similarly, there was one single family dwelling on original Lot 84.
*1331 Soon after acquiring Lots 6, 7 and 13 of the Lakeview Subdivision, Andrews and Hudson made known their intention to construct single family dwellings on each. Andrews and Hudson at all times have acknowledged their obligation to comply with all provisions of the protective covenants applicable to Unit Two, including the 20,000 square foot area requirement and the 50 foot minimum setback line requirement. Though they are concerned directly with only three lots of the Lakeview Subdivision, their position necessarily is that the covenants should be construed to allow ultimately construction of 15 single family dwellings, one per resubdivided lot.
The Property Owners Association disputed this construction of the covenants. Adopting the civilized way of resolving their bona fide differences, the parties have submitted this controversy to the Chancery Court of Lamar County, Mississippi, which, as indicated above, held in favor of the Property Owners Association. Feeling aggrieved, Andrews and Hudson have asked this Court to review the questions of law ruled upon by the Chancery Court.

III.

A.
Andrews and Hudson own the fee to Lots 6, 7 and 13 of the Lakeview Subdivision, a resubdivision of Lots 83 and 84 of Unit Two of Lake Serene Subdivision, Lamar County, Mississippi. Ordinarily, that miniscule portion of this planet's soil as a person owns may be put to such use as that person desires. Andrews and Hudson desire to build three single family dwellings, one on Lot 6, one on Lot 7 and one on Lot 13.
Over the years our law has come to recognize the need, when properly called upon, to enforce certain types of limitations upon land use. Broadly speaking, these limitations fall into two categories by reference to their source and nature. First, there are those limitations created by the public law emanating from an indentifiable sovereign, limitations such as zoning laws, building codes and fire codes. Second, private lawmaking, in accordance with the empowering and enabling rules of the sovereign, has given rise to such useful devices as licenses, easements, defeasible estates and protective covenants.
In this case, we are concerned with privately created restrictions upon land use. The land in question owned by Andrews and Hudson is subject to certain protective covenants, sometimes called restrictive covenants, which limit their use. This case turns on the construction given the term "lot" as that term has been used in the applicable covenants. Not surprisingly, each group of litigants has a different view.
We are aided by general rules of construction heretofore adopted by this Court. Indeed, in its less than serene history, Lake Serene has contributed to the development of these rules of construction, for in Kemp v. Lake Serene Property Owners Association, Inc., 256 So.2d 924 (Miss. 1971), this Court stated:
Generally courts do not look with favor on restrictive covenants. Such covenants are subject more or less to a strict construction and in the case of ambiguity, construction is most strongly against the person seeking the restriction and in favor of the person being restricted. 245 So.2d at 926.
This rule of construction had been established in this state long before Lake Serene and its litigious occupants began to make their presence felt. See Frederic v. Merchants & Marine Bank, 200 Miss. 755, 766, 28 So.2d 843, 847 (1947).
An important corollary rule, however, is that the clear and unambiguous wording of protective covenants will not be disregarded merely because a use is prohibited or restricted. If the intent to prohibit or restrict be expressed in clear and unambiguous wording, enforcement is available in the courts of this state. In A.A. Home Imp. Co. v. Hideaway Lake, 393 So.2d 1333 (Miss. 1981), this Court recognized that:
In construing restrictive covenants the question is primarily one of intention, and the fundamental rule is that the intention of the parties as shown by the agreement governs, being determined by fair interpretation *1332 of the entire text of the covenant. 393 So.2d at 1336.
See also, Schaeffer v. Gatling, 243 Miss. 155, 159, 137 So.2d 819, 820 (1962). The intent must be clear. Still, clear restrictive language, manifesting a restrictive intent, and unambiguous on its face or in the factual context faced by the Court, will be enforced.
These rules of construction are helpful guidelines. Yet in no way do they establish a precise formula which, when applied to a given case, mechanically produce an unassailable result. Our touchstone remains the covenants themselves. For it is established in our law that clearly worded protective covenants, if lawfully made, are indeed enforceable as written.

B.
When formally approved and placed of record on June 3, 1965; the original Unit Two protective covenants provided (with exceptions not relevant here) that no lot could be used except for the construction of a dwelling. At that time the only reasonable construction of the word "lot" was by reference to those lots designated formally on the only existing plat. At that time Lot 83 was a lot  one lot, and Lot 84 was a lot  one lot.
Shortly over three years later, however, the two large lots, numbered 83 and 84, were redivided so that they became 15 smaller lots. They became then known as the Lakeview Subdivision lots. The protective covenants contained no prohibition against resubdivision. The formation of the Lakeview Subdivision and the creation of 15 lots where there had once been only two was within the lawful power of the then owners of Lots 83 and 84.
A critical question is whether, with the recording of the plat of the Lakeview Subdivision on August 13, 1968, the term "lot" in the original protective covenants continued to refer to the original Lots 83 and 84, or, whether the term "lot" thereafter referred to those newly created lots numbered one through 15 of the Lakeview Subdivision. To be sure, the draftsmen of the original protective covenants had the power to word those covenants so that "lot" continued, then and forever, to refer to the original plat. Cf. Schaeffer v. Gatling, 243 Miss. 155, 159, 137 So.2d 819, 820 (1962); Kemp v. Lake Serene Property Owners Association, Inc., 256 So.2d 924, 926 (Miss. 1971). This, however, they did not do in the protective covenants under consideration here.
Law and its meanings are not static, as surely all are aware. This is true of all laws designed to last over time. It is true of terms and provisions in statutes enacted by a legislature, rules of law approved by courts and the privately made law found in covenants and contracts. Times change. Circumstances change. Those creating law, legislators, privately contracting parties, or whoever may and ought anticipate change and provide therefor. In the absence of such anticipatory provision, however, a wooden construction based on conditions no longer existing leads to folly and mischief.
The term lot in the original protective covenants in this case should be given no static definition  for it has been given none by its draftsmen. The term means each area of land designated as a lot on the day the definition is given. It refers to whatever was and is a lawfully designated "lot" on the day the definition is sought. After August 13, 1968, the three plots of land in issue here, Lots 6, 7 and 13, each became a lot. The owners of each such lot was after that date entitled to construct on each such lot one single family dwelling, provided, of course, that all provisions of the protective covenants were complied with.

C.
Nothing in the 1973 amendments to the protective covenants changes the conclusion we reach here. Construing the 1973 amendments favorably to the owners of Lots 6, 7 and 13 and strongly but fairly against those seeking to restrict use, we find that the amended covenants allow the construction on Lot 6 of the Lakeview Subdivision of one single family dwelling with appurtenant outbuildings, and a similar single *1333 family dwelling on Lot 7 and on Lot 13 each.
The language in Section 1 of the 1973 amendments must be read in light of conditions then existing. When the amendments provide for the single family dwelling limitation, they refer to:
"Lots 1 through 11 inclusive and Lots 20 through 89 in said Unit Two of Lake Serene Subdivision."
Sensibly construed, this means those areas as they then (in 1973) existed and were then subdivided. Applying the rules of construction stated and explained above, we hold that this language should be construed to read:
Lots 1 through 11 inclusive and Lots 20 through 89 (including the 15 lots of the resubdivision of Lots 83 and 84 into the Lakeview Subdivision) of said Unit Two of Lake Serene Subdivision... .
The 1973 amendments described the land covered and affected by the covenants as:
Entire Unit 2 of Lake Serene Subdivision, Lamar County, Mississippi, as per map or plat thereof on file in the office of the Chancery Clerk, Lamar County, Plat Book 1 at page 103.
This refers to the original plat. But that plat had been amended in 1968 by the Lakeview Subdivision of Lots 83 and 84. Absent an express exclusion of the amendments, the above quoted language contained in the 1973 covenants should be read as though the words "as amended" were appended thereto.
Again, an express provision to the contrary was within the power of the makers of the 1973 amendments to adopt. Had such been adopted, no court of competent jurisdiction would hesitate to enforce it. In view of the rules of construction applicable to restrictive covenants, however, we find that the language employed falls far short of the degree of specificity and clarity necessary to undo the meaning of "lot" as it had existed from August 1968 until May of 1973 and restore to that term "lot" a reference to Lots 83 and 84 which had ceased to have any legal existence five years earlier.
We note that Section 5 of the 1973 amendments to the protective covenants permits the construction of a single family dwelling on any lot having an area of 20,000 square feet or more. According to the record before this Court, Lots 1, 2, 3, 4, 12, 13, 14 and 15 of the Lakeview Subdivision contain exactly 20,000 square feet. The other seven are even larger. Nothing in what Andrews and Hudson contemplate will violate this dominant provision of the covenants.
In this context, absent a far more express provision in the 1973 amendments to the protective covenants, it is difficult to discern any justice or legality in prohibiting Andrews and Hudson from using their miniscule portion of this earth's soil as they contemplate. There is no equity in prohibiting Andrews and Hudson from constructing a single family dwelling on each of their 20,000 square foot lots while allowing such on any other similarly sized lots within Unit Two.
REVERSED AND RENDERED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS and DAN M. LEE, JJ., concur.
PRATHER, J., not participating.
NOTES
[1] The covenants further provide:

"These covenants are to run with the land and shall be binding on all parties and all persons claiming under them for a period of not to exceed eight years from the date these covenants are recorded, after which time said covenants shall be automatically extended for successive periods of eight years unless an instrument signed by a majority of the then owners of the lots has been recorded agreeing to change such covenants, in whole or in part." Without doubt the covenants, as amended, are still in full force and effect.