603 So.2d 295 (1992)
CITY OF GULFPORT, and Bayou View Homeowners Association, et al.,
v.
S.R. WILSON, Jr., et al.
No. 89-CA-0470.
Supreme Court of Mississippi.
June 3, 1992.
*296 Wendy L. Allard, James K. Wetzel, Gulfport, for appellants.
R. Christopher Wood, Houston, Tex., for appellees.
Before ROY NOBLE LEE, C.J., and PRATHER and SULLIVAN, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
The City of Gulfport and Bayou View Homeowners Association appeal from a judgment entered by the Harrison County Chancery Court, permitting lot owners in certain blocks of the Bayou View subdivision to amend a restrictive covenant, which had been in effect since 1950. The chancellor found that the lot owners properly amended the restrictive covenant with respect to Block 46 and Block 47, and that a material change in the area justified nonenforcement of the covenants. The City of Gulfport and Bayou View Homeowners Association have appealed from the judgment to this Court, and present two issues for decision.

FACTS
Bayou View subdivision was given to the City of Gulfport by the federal government after World War II in appreciation for the City's help in training troops. The subdivision is quite large, running north from Pass Christian Road (Pass Road) to Bayou Bernard. In 1950, the City of Gulfport plotted this land into a subdivision of approximately 1300 lots. At the same time, the City also recorded restrictive covenants which limited the use of lots in the subdivision for residential uses only.
This action was initially brought by a group of Bayou View residents whose property either borders Pass Road or is a block away from it. The litigation at first involved owners of Blocks 41, 46, and 47 who sought to amend the 1950 restrictive covenant prohibiting commercial activity in the subdivision. Block 41 was dropped from the action. The case centers around two issues, i.e., (1) whether the language of the restrictive covenant is clear as opposed to ambiguous; and (2) whether there exists a change in circumstances such as to render the covenant unenforceable.
The plaintiffs in the suit to amend the restrictive covenant are comprised of all the lot owners of Block 46 (Lots 1-8) and all but one lot owner of Block 47 (Lots 1-8). The language of the restrictive covenant states that amendments shall be voted on by the entire subdivision, and, in the next sentence states that owners may vote by blocks to amend or "opt out" of the covenants.
*297 A meeting was organized by lot owners and held at an elementary school across the street. None of the residents who testified at the trial could remember exactly how they were notified of the meeting, or by whom. All the residents present at the meeting, who testified in court, stated that there was about a 100% representation of Block 46, and a 90% representation of Block 47. There was discussion about wanting to amend the restrictive covenant to allow for commercial enterprises. A vote was taken, with all owners of Block 46, and all but one owner of Block 47 voting to amend the covenants. The sole dissenter in Block 47 was Hermie Smith, who owns the southern half of Lots 1 & 2, which do not border Pass Road. After the vote, affidavits were signed identifying the owner, the property, and his/her vote on the amendment issue.
The Bayou View Homeowners Association and the City of Gulfport are challenging this amendment. The City and homeowners association claim that the whole subdivision must vote on an amendment, and even if the court rules otherwise, that the amendment was improper, since it was not signed by any of the owners, but by the attorney, Bobby Joe Randall. No powers of attorney were filed on behalf of the lot owners.
Since the subdivision's inception in 1950, there have only been a few occurrences affecting the restrictive covenants. In 1954, the City of Gulfport amended the restrictive covenant with respect to Block 56 of the Bayou View. No vote by the entire subdivision was conducted in the 1954 amendment. In 1955, the restrictive covenant was enforced when it was learned that William Rich, the owner of Lots 4 & 5 in Block 47 had leased the land to an oil company for a possible site of a gas station.
In 1979, the City of Gulfport rezoned the area in question R-B (residential-business) for the land to be used commercially. However, the zoning board did not consider the fact that there were restrictive covenants in place. Later, in 1984, Blocks 46 & 47 voted to amend the restrictive covenants. Also around that time, one of the owners, Sylvia Ballard, owner of Lot 5, Block 46, applied for a building permit from the City to construct an office building. Mrs. Ballard claims that her plans were approved and that she was issued a building permit from the City. The City, on the other hand denies that a permit was ever issued, citing both the Board of Adjustments and the Mayor and Board of Commissioners' decisions. Regardless, construction was never begun, pending the outcome of this litigation.
The plaintiffs in this initial action claim that circumstances have changed since the subdivision was platted, and therefore the covenants should not be enforced. To decide whether a change has occurred, a comparison must be made of the area now as opposed to its condition in 1950. At the time that the plat was recorded, the area was of a rural nature. Pass Road was a lightly traveled two-lane road connecting Gulfport and Biloxi. In fact, the subdivision was on the outskirts of town. Testimony at trial indicated that, in 1950, directly south across Pass Road from the subdivision was a pig farm which was on federal land and was run by the patients at the Veteran's Administration Hospital.
Because of the pig farm's presence, the City of Gulfport had trouble selling lots in the subdivision. Further to the east on Pass Road past the pig farm was Ashton's grocery store, which was directly across from Block 41, Lot 21. To the west of the pig farm on Pass Road was the Princess Drive-In restaurant. On the northwest corner of Pass Road and Washington Avenue was a small building housing Bailey Mortgage and Real Estate Company, which is located directly west of Bayou View subdivision. To the east of Block 41, Lot 21, was a large area of vacant land, which housed a plant nursery in the southwest corner abutting Pass Road.
In comparing the same area in 1988, a number of changes can be seen. First of all, Pass Road has been widened to four lanes, and now serves as a major traffic artery between Gulfport and Biloxi. It is the second most traveled thoroughfare in *298 the area, behind only Highway 90 which traces the beach-front. A pig farm is no longer present south of Pass Road, having been replaced with Pass Road Elementary School. The Princess Drive-In has been replaced with a television repair business. The Bailey Mortgage and Real Estate building has grown into Bailey Plaza, hosting an array of 15 small shops. Ashton's grocery store is now a furniture store. In the area that once occupied the pig farm and the grocery store now stands a Captain D's restaurant. To the east of Ashton's grocery store is Hardy Court Shopping Center, an outdoor "string mall" comprised of about 25 stores. Directly to the north where the nursery and vacant lot used to be now stands the Gulf Mist Apartments, which are low rent housing apartments.
Besides the changes occurring outside the subdivision, equal changes have occurred inside the subdivision. It was testified at trial that two in-home beauty shops were being run in the subdivision, as well as a floor refinishing business, a sand and gravel hauling business, a canoe-rental business, and a drapery business. Some of these claims were disproven at trial, and others were shown to have "special permits" issued by the City.
Testimony was heard from one of the plaintiffs, Steve R. Wilson, Jr., stating that when he purchased Lots 4 & 5 of Block 47 in 1982, he bought the undeveloped property for an investment, and with full knowledge of the restrictive covenants. He also testified that he allows a nonprofit organization to sell Christmas trees on his lot each year, as well as an occasional flea market. Mr. Wilson's understanding of the meeting was that they had voted to proceed in chancery court with the matter. He stated that although there were no physical indications (signs) that businesses were being operated in the subdivision, it was common knowledge that several were present.
Mrs. Morris, living on Lot 8, Block 46, testified as to the changes which had occurred since 1950, having moved into the subdivision with her parents in 1950. She testified as to the presence of in-home businesses being operated in the neighborhood. An advertisement listed in the yellow pages of the current phone book, for a floor refinishing business, with an address and phone number inside the subdivision was introduced into evidence.
Jack Ballard, the owner of Lot 5, Block 46, who had requested the building permit alluded to earlier, stated that he purchased the lot as an investment in 1983 from Alabama Savings & Loan. He testified that the prior resident of the lot operated an accounting business out of his home. Also, Mr. Ballard stated that a resident of the subdivision operated a gravel and sand hauling business out of his house. Mr. Ballard had used this man's services for his construction business, but stated that all his equipment is not stored in the neighborhood, and the gravel is moved directly from the pits, not his yard.
The plaintiffs also called on Carl Alphonso, a real estate agent in the area to testify. Mr. Alphonso stated that he has sold many lots in the subdivision, as well as the surrounding area. He did add that on a four mile stretch on Pass Road, the only residential Blocks are those numbered 46 & 47. Also, he stated that lots in Bayou View were desirable because the lots were large and because of the restrictive covenants. However, he testified that Blocks 46 & 47 were not too desirable due to the volume of traffic on Pass Road.
The homeowners association and the City called S.J. Marengo, residing at Lot 5, Block 45, to testify that the value of his land has increased since 1950, and that the covenants have kept owners from adding on to their houses. He stated that he wanted to retire there and objected to any amendments to the restrictive covenants.
Howard Johnston, the alleged canoe-renter, testified that his now-defunct canoe business was not at his home, but at a location on Pass Road. Since he is no longer in the canoe business, he stores his remaining twelve canoes at his house and lets friends borrow them. He added that the City did question him concerning the presence of the canoes, but never requested that they be removed.
*299 The final witness the homeowners called was Dominick DeNicola, who lives in Bayou View on 40th Street now, but built the house on Lot 6, Block 44 in 1950. Mr. DeNicola stated that he is on the Gulfport Planning Commission as well as the Board of Adjustments, which hears zoning cases, and is aware of businesses operating in the neighborhood, but they were granted "special use" permits. He added that he has conducted business with one of these businesses, namely Barnett's Floor Service, whose phone number is a Bayou View residence but whose business is conducted out of a warehouse.
The chancellor noted in the opinion that he viewed the area in question, by driving east and west down Pass Road, as well as through Bayou View subdivision before making his ruling.

DISCUSSION

I. DID THE APPELLEES PROPERLY AMEND THE RESTRICTIVE COVENANTS ACCORDING TO THE PROCEDURES SET OUT IN THE COVENANTS?
The language of the covenant for amending the restrictive provision follows:
"The undersigned City of Gulfport, Mississippi, does hereby agree to said protective covenants and does hereby agree that same may and does hereby attach to the title to said land and be binding on all persons claiming under said City's title until January 1st, 1975, at which time said covenants shall be automatically extended for successive periods of ten years unless by vote of the majority of the then owners of the lots or parcels of land described herein, it be agreed to change said covenants in whole or in part, each block involved to be considered as a separate unit in voting any such change, . ."
Although the appellants contend that the restrictive covenant is clear and unambiguous and that an effective amendment requires the approval by the majority of the 1300 lot owners in the Bayou View subdivision, the last three lines of the provision state that to change the covenants, in whole or in part, each block involved is to be considered as a separate unit in voting any such change. Block owners, therefore, argue that the last part of the paragraph clearly states that amendment may be made by individual blocks and, in the alternative, if they are incorrect, that the covenant is ambiguous, and should not be enforced.
The general rule in Mississippi concerning restrictive covenants is stated in the case of Kemp v. Lake Serene Property Owners Association, Inc., 256 So.2d 924 (Miss. 1971), which stated:
"Generally courts do not look with favor on restrictive covenants. Such covenants are subject more or less to a strict construction and in the case of ambiguity, construction is most strongly against the person seeking the restriction and in favor of the person being restricted."
Id. at 926. See also Andrews v. Lake Serene Property Owners Association, 434 So.2d 1328, 1331 (Miss. 1983); Kinchen v. Layton, 457 So.2d 343, 345 (Miss. 1984).
In Kinchen v. Layton, 457 So.2d 343 (Miss. 1984), this Court said with relation to restrictive covenants:
"Covenants [restrictive] of this kind should be fairly and reasonably construed and the language used will be read in the ordinary sense. [citation omitted]. The entire instrument should be considered in ascertaining its meaning, but the restrictions should not be extended by strained construction, especially when, as in this case, the restrictive covenants expressly permit the use being made of the land."
Id. at 346 citing Shaeffer v. Gatling, 243 Miss. 155, 159, 137 So.2d 819, 820 (1962).
Mendrop v. Harrell, 233 Miss. 679, 103 So.2d 418 (1958), the Court construed restrictive covenants and stated:
"The language used will be read in its ordinary sense, and the restriction and burden will be construed in the light of the circumstances surrounding its formulation, with the idea of carrying out its object, purpose and intent. They are to *300 be fairly and reasonably interpreted according to their apparent purpose."
Id., 233 Miss. at 688, 103 So.2d at 422 citing Carter v. Pace, 227 Miss 488, 86 So.2d 360 (1956); 7 Thompson, Real Property § 3569 (1940). See also A.A. Home Improvement Co., v. Hide-A-Way Lake Club Inc., 393 So.2d 1333, 1336 (Miss. 1981).
We again note that in 1954, the City of Gulfport amended this restrictive covenant with respect to Block 56 without presenting the issue to the entire subdivision for a vote. The City should not now be able to assert the "majority vote" defense when its actions in the past have shown otherwise.
We are of the opinion that the covenant provides that amendments may be made by a majority of the owners of the blocks involved. However, in the event the language had been held to be ambiguous, the covenant would be construed in favor of the block owners in line with the maxim favoring free and unobstructed use of real property. See Kinchen, 457 So.2d at 345.
The appellants contend next under this issue that the restrictive covenant was not amended in the appropriate manner or time, e.g., that it was never properly amended because their attorney signed the amendment that was filed in the chancery court clerk's office, and not the lot owners themselves; that no power of attorney was executed to permit Mr. Randall to bind the owners; and, that the amendment was prematurely executed before the ten (10) year period had expired.
It has been held that the circulation of a petition is sufficient to comply with the requirements of "majority vote." Harrison v. Air Park Estates Zoning Committee, 533 S.W.2d 108, 111 (Tex.Civ.App. 1981). In the present case, the voting at the block owners meeting, together with the signing of the affidavits clearly demonstrated the desires of the owners to effect such an amendment. The affidavits were attached to the amendment when filed at the chancery clerk's office. We are of the opinion that such procedure constituted substantial compliance with the procedure for amending the restrictive covenant.
With respect to the timing of the amendment, the language of the covenant stated that "said covenants ... binding on all persons ... until January 1, 1975, at which time said covenants shall be automatically extended for successive periods of ten (10) years unless by vote ... to change said covenants ..." The covenant is silent as to when the vote must take place. It seems reasonable for the amendment to be voted on before the ten (10) year period to be effective for the start of the next ten year period. In this case, the block owners voted to amend the covenant in early 1984, at the block owners meeting at the elementary school, and actually filed the amendment on June 12, 1984. If the amendment was not ratified to go into effect on January 1, 1985, then the old covenant would automatically go into effect for another 10 years. See Dauphin Island Property Owners Association v. Kuppersmith, 371 So.2d 31 (Ala. 1979); White v. Lucas, 253 Ark. 476, 487 S.W.2d 615 (1972). Finally, 4 A.L.R.3d 570, § 4[b] states:
"Usually the right to amend, extend, or nullify the restrictions must be exercised by affirmative action on the part of a certain number or percentage of the affected owners. However, in instances where restrictions have been imposed for a definite term of years, the agreement or covenant sometimes provides that they will continue in effect for one or more additional terms unless, prior to their expiration, the property owners action affirmatively to terminate or modify them."
Id. at 582.
The issue is resolved against the appellants.

II. HAS THERE BEEN A MATERIAL CHANGE IN CIRCUMSTANCES WITHIN THE BAYOU VIEW SUBDIVISION TO JUSTIFY AMENDMENT TO OR NONENFORCEMENT OF THE RESTRICTIVE COVENANTS?
The principle relating to the change necessary to rezoning property, which has been zoned under a municipal ordinance, is *301 different from the change necessary to alter a restrictive provision of a covenant. In rezoning, usually there must be a change in the neighborhood or area. That change does not necessarily reach the same height as is usually required when applied to an area restricted in a covenant in order to circumvent it. Other jurisdictions have so held. Elliott v. Jefferson County Fiscal Court, 657 S.W.2d 237 (Ky. 1983); Hawthorne v. Realty Syndicate, Inc., 300 N.C. 660, 268 S.E.2d 494 (1980); Ortiz v. Jeter, 479 S.W.2d 752 (Tex.Civ.App. 1972); Albino v. Pacific First Federal Savings & Loan Association, 257 Or. 473, 479 P.2d 760 (1971); Holling v. Margiotta, 231 S.C. 676, 100 S.E.2d 397 (1957); 5 Powell on Real Property § 679[2].
Some other authorities hold to the contrary. In 5 Restatement of Property, § 564, P. 3313, the principle is stated:
"It is quite generally held that restrictive covenants against business enterprises will not be enforced where there has been a fundamental change in the character of the property due to municipal expansion, spread of industry, or other causes."
Id. at 505. See Crissman v. Dedakis, 330 So.2d 103 (Fla.App. 1976).
However, in view of the fact that we have decided issue number one in favor the appellees and, since we are of the opinion that the chancellor was not manifestly wrong in his finding on the facts of that issue, it is not necessary for us to discuss issue two as to whether or not, on the facts of this case there was such a change as to render the restrictive provision of the covenant unenforceable.
There being no reversible error as to issue number one, the judgment of the lower court is affirmed.
AFFIRMED.
HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.