654 So.2d 524 (1995)
James F. STOKES, Jr. and Edwina Stokes
v.
The BOARD OF DIRECTORS OF LA CAV IMPROVEMENT COMPANY.
No. 92-CA-00028-SCT.
Supreme Court of Mississippi.
April 27, 1995.
*525 James E. Lambert, Jackson, for appellants.
James L. Martin, Martin Young & Wright, Jackson, for appellee.
Before HAWKINS, C.J., and McRAE and JAMES L. ROBERTS, Jr., JJ.
McRAE, Justice, for the Court:
From a Final Decree entered on November 1, 1991 by the Madison County Chancery Court in a dispute between property owners, James and Edwina Stokes and a property owners' association, La Cav Improvement Company, over the improvement of an earthen pier and construction of a boat slip on Lake Cavalier, the property owners raise this appeal. The chancellor correctly found that the language of a covenant revised in 1984 did not render null and void the restrictive provisions of the Stokes' warranty deed. However, we find that the chancellor erred in interpreting the restriction in the warranty deed against construction of a building on the Stokes' lot as precluding the improvement of the existing pier and the addition of the boat slip. We further find that the chancellor abused his discretion in awarding attorney fees to La Cav Improvement Co. Accordingly, we reverse and remand for proceedings consistent with this opinion.

I.
Lake Cavalier is a residential development in Madison County, Mississippi. Building and design control, as well as lake and land use, are governed and enforced by the Board of Directors of the La Cav Improvement Company ("La Cav"), successor-in-interest to the original developer, Lake Cavalier, Inc. La Cav is a homeowner's association, to which all property owners in the development belong.
Stokes and his ex-wife, Kendra L. Stokes, purchased the subject property, Lots 14 and 17 of Lake Cavalier, Part 1, by warranty deed dated June 16, 1977, from Ben H. Jacks and Ethel T. Jacks. The warranty deed conveying the property from Lake Cavalier, Inc. to the Jacks on August 8, 1960 carried with it certain protective and restrictive covenants which "shall run with the land from this date until the expiration date set forth in said instrument."[1] With regard to Lot 17, the deed specifically provided:
no building of any kind shall be constructed on Lot 17, and said Lot 17 shall not be sold, transferred, encumbered or conveyed alone, but shall always be sold, transferred, encumbered and conveyed jointly with Lot 14 of Lake Cavalier, Part 1, which said Lot 14 of Lake Cavalier, Part 1, is on the opposite [side] of the private road at the rear of said Lot 17 and the said Lot 17 and the said Lot 14 of Lake Cavalier, Part 1, shall in all respects be treated as one single lot. (emphasis added).
The Stokes' property is one of several Lake Cavalier sites which fronts on two sections of the lake. The Stokes' residence is built on Lot 14, which faces the main lake, where the Stokes share a pier with a neighbor. Lot 17, across the road from Lot 14, is a shallow lot which faces the smaller, quieter fishing lake. Because of its size and location, it is a so-called "non-building" lot. Although the Stokes pay property taxes on the lot, for purposes of membership fees and dues and voting privileges, it is considered one lot together with Lot 14.
Unlike Lot 17, the warranty deed restrictions to the neighboring "non-building" Lots 18, 19, 20, 21 and 22, recorded in 1966, provide in relevant part, as follows:
(a) That no buildings, structures, outbuildings or any other improvements shall be erected on the property conveyed except that a pier may be erected in the water in front of said lot in accordance with the protective covenants applicable to Lake Cavalier, Inc., as recorded in Volume *526 74 at page 70 of the records of deeds in the Office of the Chancery Clerk of Madison County, Mississippi. (emphasis added).
The provision of the covenants covering all Lake Cavalier lots, adopted May 8, 1959, which governed pier construction, specifies the maximum dimensions of any pier or platform constructed as well as the materials to be used.
On May 15, 1984, the date on which the original body of restrictive covenants was set to renew automatically absent some action by the property owners, La Cav adopted and recorded a new set of simplified protective covenants, rules and regulations. Under the terms of new covenant, it was provided that:
all covenants and restrictions heretofore imposed on the property comprising the six Lake Cavalier Subdivisions to which reference is hereinabove made shall be null and void and of no further effect and the following covenants, restrictions and regulations, until changed, shall be effective and enforceable against all property comprising the six Lake Cavalier Subdivisions including all easement rights and other hereditaments running with the land on which said subdivisions are located ... (emphasis added).
Provisions analogous to those in the 1959 document were made for pier and pier platform construction.
Given this "regulatory framework," James Stokes and his present wife, Edwina, set out to repair and improve the wood and earth fishing pier which had been built on Lot 17 by its previous owner, Ben Jacks. Stokes testified that the boards supporting the earthen pier had rotted and the land was eroding. He therefore did not seek La Cav's approval or a building permit before hiring a contractor and beginning the project because he felt it was only a only repair project and that he was "basically enhancing and securing the area." Stokes spent $860.00 on the project; $160.00 on construction of the "arm" that created the boat slip next to the earthen pier and the balance, on repairing the earthen pier, itself.
By letter dated April 3, 1990, Bobby Arnold, President of La Cav, then advised Stokes that the Building Committee had discussed his boat slip project, noting that he had failed to seek approval of his plans, and further, that the project was located on a non-building lot. Stokes responded on April 6, 1990, with a sketch of the project and his apologies for failing to submit the proposed "renovation" to the Board.
By letter dated April 13, 1990, Arnold then advised Stokes that the Board requested that he remove the arm that created the boat slip and fill the area in. Attached was a letter from La Cav's attorney, James L. Martin, advising La Cav that he construed the language of the Stokes' warranty deed restriction, "no building of any kind shall be constructed on Lot 17," as providing "an express prohibition against buildings of any kind on Lot 17." He further indicated that both the original and the current covenants restricted any building on the property.
Stokes, who has served on several La Cav committees, including that responsible for revising and adopting the new covenants, testified that he interpreted the warranty deed restriction to mean "I had the privilege of maintaining that lot, mowing it, keeping it up, and ah, paying taxes on that lot, but I could not build a house there."
Arnold testified that the Board interpreted the Stokes' project as being "in violation of the deed restriction concerning building of any kind." On cross-examination, he clarified his position, stating that a simple reading of the restriction "specifically said there was to be no building of any kind on Lot 17. It allowed peers [sic] on Lots 18 through 22. It did not allow boat slips. We're not questioning the earthen peer [sic] on 17. We're questioning the boat slip."[2] As to any damages suffered, Arnold testified that La Cav had incurred approximately $1,000.00 in legal fees in "trying to protect the property owners, all the other property owners' rights on the lake... ."
*527 La Cav filed a complaint in the Madison County Chancery Court against the Stokes on August 28, 1990. The association sought both permanent and temporary injunctions to prevent the Stokes from any construction activity on their lake front property. In their counterclaim, the Stokes sought a declaratory judgment, asking the court to determine the parties' rights and liabilities under both the warranty deed and the restrictive covenants and to declare the property to be no longer encumbered by the warranty deed restrictions.
A hearing was held on August 21, 1991. The chancellor issued a written opinion on September 27, 1991, finding that the deed restrictions were enforceable; that the Stokes had undertaken the boat slip project without first obtaining a building permit or the approval of the building committee; and that the Stokes continued the project despite notice to the contrary, acting against the interests of property owners covered by the same covenants. In his final judgment, issued November 1, 1991, the chancellor enjoined the Stokes from violating both the Lake Cavalier Protective Covenants and the deed restrictions recorded in Book 82, Page 25 in the Office of the Madison County Chancery Court, requiring them to fill in the boat slip and to refrain from any further construction projects on the lot in question. The Stokes' counterclaim for declaratory judgment was dismissed with prejudice and they were ordered to pay La Cav's attorneys fees in the amount of $750.00, as well as all costs of the proceedings.

II.
When construing restrictive covenants, this Court follows the rule set forth in Kemp v. Lake Serene Property Owners Assoc., Inc., 256 So.2d 924 (Miss. 1971).
Generally courts do not look with favor on restrictive covenants. Such covenants are subject more or less to a strict construction and in the case of ambiguity, construction is most strongly against the person seeking the restriction and in favor of the person being restricted.
Id. at 926. See also City of Gulfport v. Wilson, 603 So.2d 295, 299 (Miss. 1992); Andrews v. Lake Serene Property Owners Assoc., Inc., 434 So.2d 1328, 1331 (Miss. 1983). The language of restrictive covenants is to be read "in its ordinary sense," considering the entire document as well as the circumstances surrounding its formulation to ascertain its meaning, purpose and intents. Wilson, 603 So.2d at 299; Kinchen v. Layton, 457 So.2d 343, 346 (Miss. 1984); Mendrop v. Harrell, 233 Miss. 679, 688, 103 So.2d 418, 422 (1958).
At issue is the impact of the language in the May 15, 1984 covenant, which reads as follows:
all covenants and restrictions heretofore imposed on the property comprising the six Lake Cavalier Subdivisions to which reference is made shall be null and void and of no further effect and the following covenants, restrictions, and regulations, until changed, shall be effective and enforceable against all property comprising the six Lake Cavalier Subdivisions... .
In support of their argument that neither the May 19, 1959 restrictive covenants governing all Lake Cavalier lots nor the specific warranty deed restriction against construction of buildings on Lot 17 precludes repair of the pier and construction of a boat slip on Lot 17, the Stokes contend that the language of the May 15, 1984 restrictive covenants adopted by the La Cav membership renders all prior restrictions, both by covenant and by deed, null and void. La Cav, on the other hand, asserts that the provisions of the original covenant were carried forward in the revised covenant and further, that the revised covenant continued to recognize any deed restrictions upon individual lots.

A. The 1959 Covenants
Looking first at whether the language of the 1984 covenant serves to render null and void the terms of the 1959 covenant, we note that the 1959 covenant expressly provided for its termination on May 15, 1984, but allowed for its extension upon action by the members of the homeowners' association. In relevant part, the covenant provided as follows:
the following protective covenants shall apply to all lots in said subdivisions, shall run with the land and shall be binding on all persons owning any of said lots from this *528 date until May 15, 1984, after which time said covenants shall be automatically extended for successive periods of ten (10) years unless an instrument signed by a majority of the then owners of the lots has been recorded, agreeing to change said covenants in whole or in part or to revoke the same entirely. (emphasis added).
The 1984 covenants expressly recognize the 1959 covenants, note the above-quoted language, and as a preamble to the language making "all covenants and restrictions hereto imposed ... null and void and of no further effect ...," provide that "a majority of the owners of individual lots are desirous of amending said covenants to modernize the said covenants and to provide more flexibility in regard thereto."
When determining the intent of the parties, this Court has held that "the fundamental rule is that the intention of the parties as shown by the agreement governs, being determined by fair interpretation of the entire text of the covenant." A.A. Home Improvement Co. v. Hide-A-Way Lake, 393 So.2d 1333, 1336 (Miss. 1981). Looking at the "ordinary language" of the covenants, and considering the entire text of the documents and the circumstances surrounding their adoption, La Cav's argument that the revised covenants were intended as a mere amendment to the original covenants is contrary to the "null and void" language of the 1984 covenants and the termination language of the 1959 covenants. Accordingly, the chancellor correctly found that the restrictions contained in the 1984 covenants are controlling.

B. The Warranty Deed
The Stokes next contend that the "null and void" language of the 1984 covenants renders null and void the restrictive terms of their warranty deed, which provide that "no building of any kind shall be constructed on Lot 17." Looking at the "ordinary language" of the covenants, the 1984 document references only the 1959 covenants, recorded in Book 74 at Page 70 in the office of the Madison County Chancery Court. It makes no mention whatsoever of its effect upon the Stokes' warranty deed or any other warranty deed restrictions. Paragraph 1 of the 1984 covenants provides, in fact, that
These covenants and restrictions shall not affect any existing buildings or other improvements or any other situation or state of facts now in existence. However, these covenants shall apply to all matters covered hereby from and after the date hereof. (emphasis added).
To suggest that the warranty deed restrictions imposed on the Stokes' property as well as upon the owners of other "non-building" lots fall within the category of "any other situation or state of facts now in existence" and are therefore not affected by the 1984 covenants would not strain the construction of that document. Accordingly, we find no merit in the Stokes' argument that the 1984 covenants rendered null and void the restrictive terms of their warranty deed.

III.
Ambiguous language in a restrictive covenant is to be construed "most strongly against the person seeking the restriction and in favor of the person being restricted." Kemp, 256 So.2d at 926. Where the language is clear and unambiguous, "protective covenants will not be disregarded merely because a use is prohibited or restricted. If the intent to prohibit or restrict be expressed in clear and unambiguous wording, enforcement is available in the courts of this state." Andrews, 434 So.2d at 1331.
At issue is whether a deed restriction providing that "no building of any kind whatsoever shall be constructed on said Lot 17" precludes the repair of an earthen pier and construction of an L-shaped earth and wood addition to that pier so as to create a boat slip. The Stokes urge construction of this provision according to its plain language, that is, as prohibiting the erection of a house or other permanent structure on the lot. La Cav asserts that aside from the Stokes' failure to obtain Building Committee approval before repairing the pier, it objects only to construction of the boat slip. Based on the language used in the restrictive provisions of the warranty deeds to the other "non-building *529 lots," which provides "that no buildings, structures, outbuildings or any other improvements shall be erected on the property conveyed except that a pier may be erected in the water in front of said lot," La Cav argues that although construction of a pier is permissible, construction of a boat slip is not.
At trial, La Cav sought to defend its position by arguing that a distinction exists between a pier and a boat slip. Bobby Arnold, La Cav President, defined a boat slip as a permanent storage place, as distinguished from a pier, which is used for "temporary parking." The dictionary, however, defines "slip" as "[a] docking place for a ship; pier." American Heritage Dictionary of the English Language at 992 (Houghton Miflin Co. 1981). The limiting language of the Stokes' warranty deed restriction would clearly seem to prohibit construction of a boat house, storage shed or some other outbuilding which would impede the view of the lake or clutter the small lot. However, when read in light of the restrictive language in the warranty deeds to the neighboring properties, we would construe the Stokes' deed as allowing construction of either a pier or a boat slip on Lot 17.

IV.
Mississippi follows the rule that "unless a statute or contract provides for imposition of attorney fees, they are not recoverable." Century 21 Deep South Properties, Ltd. v. Corson, 612 So.2d 359, 375 (Miss. 1992). Further, "[w]hen there is no contractual provision or statutory authority providing for attorney fees, they may not be awarded as damages unless punitive damages are also proper." Id.; Smith v. Dorsey, 599 So.2d 529, 550 (Miss. 1992). Within these guidelines, the award of attorney fees and the amount awarded is within the discretion of the trial court. Smith v. Dorsey, 599 So.2d at 550. Since the Stokes did not violate the restrictive language of the warranty deed or the 1984 covenants by adding a boat slip to the pier, the chancellor abused his discretion in awarding attorney fees to La Cav.

V.
In conclusion, we find that the 1984 revised covenant had no effect on the restrictive provisions of the Stokes' warranty deed. However, the chancellor erred in construing the language of the warranty deed so as to preclude addition of a boat slip to an existing pier. We further find that the award of attorney fees to La Cav Improvement Co. was improper. Accordingly, we reverse and remand for proceedings consistent with this opinion.
REVERSED AND REMANDED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
NOTES
[1] The deed, however, provides no expiration date for the restrictive and protective covenants.
[2] Arnold drew a distinction between a boat slip and a pier, stating that a pier is a place to fish from as well as a temporary boat parking place, whereas a slip provides a permanent parking place.