MAXWELL, J.,
for the Court:
¶ 1. Mohamad Rawaid, owner of BP Quickmart in New Albany, Mississippi, wants to shut down the Hispanic grocery store next door, which he claims is cutting into his beverage and tobacco sales. Both properties used to be part of the same parcel. And when the parcel split in two, Rawaid’s property became the beneficiary of a covenant restricting how the other property could be used — until 2019, no portion of the other property can be used to operate a “convenience-type food store” or sell gasoline.
¶ 2. Rawaid claims Murguia &. Arias Grocery, LLC (M & A Grocery) is violating that restrictive covenant by selling some of the same food and non-food items that he does. But the covenant does not restrict the operation of any “food,store” Or any food store selling some of the same items that a convenience store sells. It only restricts the operation of a food store of the “convenience type.”
¶ 3. The chancellor found M & A Grocery’s food store was not of the “convenience type” and, thus, did not violate the restrictive covenant. Not only does the store cater to a specific demographic (Hispanics), stock mainly items labeled in Spanish, and advertise as a “Mexican” store, it does- not have extended early-morning and late-night hours like a convenience store and is not designed for quick in-and-out purchases. Instead, like other grocery stores, it provides carts and baskets for its customers’ use in perusing and amassing items such as meat, sodas, household cleaners, even piatas, from its multiple aisles of shelves, freezers, and refrigerators.
¶ 4. As our law does not generally favor restrictive covenants, the chancellor rightly construed the phrase “convenience-type food store” to mean only food stores of the “convenience type” and no others. And the chancellor supported his finding — that M & A Grocery’s food store was not of the “convenience type” — with credible and substantial evidence from the record. *120 Thus, we affirm the chancellor’s judgment denying Rawaid’s request for a permanent injunction against M & A Grocery.
Background
¶ 5. The New Albany properties on which BP Quickmart and M & A Grocery operate used to be part of the same piece of property, with the same owner, R.R. Morrison & Son, Inc. R.R. Morrison & Son split the property into separate parcels. When it sold one parcel to James May in 1992, it placed a restriction in the deed:
[N]o portion of the property shall be utilized for the operation of a convenience-type food store nor shall the retail sale, storage or distribution of motor fuels or petroleum fuel products be permitted on any portion of the above described lands for a period of twenty-five (25) years from [January 30,1992],
And when it sold another parcel to Lisa Carr 1994, it expressly stated Carr’s parcel would be the beneficiary of the restrictive covenant in the May deed.
¶ 6. Carr developed her property into BP Quickmart, a gas station / convenience store. When Carr sold the property to Rawaid in 2006, the deed expressly conveyed to Rawaid the rights and benefits created by the restrictive covenant in the May deed.
¶ 7. At the time Rawaid bought his property, May was operating a video-rental / gift store next door. But with the advent of online video rental and streaming came the extinction of the brick-and-mortar video store. And May closed his doors in 2009. May conveyed his property to May’s New Albany Rental, LLC, which in turn began leasing the old store’s space to various businesses. One of these businesses is M & A Grocery, which opened a “Mexican” grocery store in February 2012.
¶ 8. Three months later, Rawaid filed an action in Union County Chancery Court against May’s New Albany Rental and M & A Grocery. While he initially sought damages for breach of the restrictive covenant, he amended his complaint, seeking only a permanent injunction against the operation of M & A Grocery’s store. After a bench trial in October 2012, Chancellor Michael Malski denied Rawaid’s claim. In his final order, the chancellor found “[t]he dispositive issue centers on whether M & A Grocery is a convenience-type food store.” And he concluded it was not.
f 9. Rawaid timely appealed.
Discussion
I. Construction of Restrictive Covenants
¶ 10. Much of Rawaid’s appellate brief is dedicated to a discussion about the general principles of contract interpretation. He argues that the chancellor legally erred by not recognizing the phrase “convenience-type food store” is ambiguous and not applying the cannons of construction to resolve the ambiguity in his favor. And he asserts that this court should apply de novo review to correct the chancellor’s error.
¶ 11. But what Rawaid misses is that the contractual language he seeks to enforce is a restrictive covenant in a property deed. And our supreme court has made clear that restrictive covenants get their own set of construction rules. Stokes v. Bd. of Dirs. of La Cav Imp. Co., 654 So.2d 524, 527 (Miss.1995) (citing Kemp v. Lake Serene Prop. Owners Ass’n, 256 So.2d 924, 926 (Miss.1971)). Because the law generally disfavors restricting another’s property rights, restrictive covenants “are subject more or less to a strict construction.” Id. “[A]nd in the case of ambiguity, construction is most strongly against the person seeking the restriction and in favor of the person being restricted.” Id. (emphasis added).
*121 ¶ 12. The fundamental construction rule is that the intention of the parties, as shown by the language of the agreement, controls. Id. at 528 (citing A.A. Home Improvement Co. v. Hide-A-Way Lake, 393 So.2d 1333, 1336 (Miss. 1981)). The language of restrictive covenants is to be read “in its ordinary sense” and in the context of the entire document, in order to determine the covenant’s meaning, purpose, and intent. Id. at 527 (quoting City of Gulfport v. Wilson; 603 So.2d 295, 299 (Miss.1992)). And only when the intent to prohibit or restrict is expressed in clear and unambiguous language will the restriction be enforced. Id. (citing Andrews v. Lake Serene Prop. Owners Ass’n, 434 So.2d 1328, 1331 (Miss.1983)).
¶ 13. So under these principles, “convenience-type food store” is to be read in its ordinary sense. It is also to be strictly construed — meaning it is to be no more restrictive than what the language supports. And any ambiguity created by the phrase is to be construed against Ra-waid — the person seeking the restriction— and in favor of M & A Grocery — the party being restricted. This means that, for Ra-waid to succeed on appeal, the language of the restrictive covenant in the May deed must dearly and unambiguously express an intent to restrict or prohibit the type of store operated by M & A Grocery.
¶ 14. Further, this court’s review of a ruling regarding a restrictive covenant is limited to abuse of discretion. COR Devs., LLC v. Coll. Hill Heights Homeowners, LLC, 973 So.2d 273, 279 (¶ 12) (Miss.Ct.App.2008) (citation omitted); Sullivan v. Kolb, 742 So.2d 771, 775 (¶ 10) (Miss.Ct.App.1999). Rawaid is correct that even under this deferential standard, “we review all questions of law de novo.” COR Devs., 973 So.2d at 279 (¶ 12). But the only question of law is whether the phrase “convenience-type food store” is clear and unambiguous — and thus must be enforced as written — or is ambiguous— and thus must be construed in favor of M & A Grocery. Determining if M & A Grocery is “operating] a convenience-type food store” involves questions of fact. And we will only reverse the chancellor’s factual determinations if they were “manifestly wrong, clearly erroneous, or lacked the support of substantial, credible evidence.” Id.
II. Construction of “Convenience-Type Food Store”
¶ 15. With the above guiding principles and limited review in mind, we find no reversible error in the chancellor’s decision that M & A Grocery is not operating a “convenience-type food store.”
¶ 16. The chancellor read the phrase “convenience-type food store” in its ordinary sense — concluding the intent was to restrict the operation of other convenience stores. See Stokes, 654 So.2d at 527. While Rawaid argues the inclusion of the word “type” makes the phrase ambiguous, this argument actually hurts rather than helps him, as any ambiguity in the language of the restrictive covenant must be construed most strongly against him. See Kinchen v. Layton, 457 So.2d 343, 347 (Miss.1984) (finding restrictive-covenant phrase “temporary structure” to be ambiguous and construing ambiguity against party seeking to remove structure from neighbor’s property). And to the extent he argues the inclusion of the word “type” expands the category of food stores to be restricted, this interpretation is not supported by the language. Read in its ordinary sense, the phrase means exactly what it says — food stores of the same type as a convenience store.
¶ 17. Thus, the chancellor correctly focused on the characteristics of a convenience store that differentiate this type of *122 store from other stores that sell food — a limited selection of items, mostly individually packaged; easy access to these items and the check-out counter; and early-morning and late-night hours. The chancellor found M & A Grocery lacked the defining characteristics of a convenience store. M & A Grocery sold bulk snacks and beverages, meats, frozen foods, household goods, and specialty items catering to Hispanics. M & A Grocery did not have early-morning or late-night hours. And it was not designed for quick in-and-out purchases. Instead, it had the defining characteristics of a “small grocery store,” providing baskets and carts, so that its customers could peruse its multiple aisles.
¶ 18. Rawaid argues that the purpose of the restrictive covenant was to prevent competition, and that M & A Grocery is cutting into his beer and tobacco sales. But “[w]hen determining the intent of the parties, ... ‘the fundamental rule is that the intention of the parties as shown by the agreement governs, being determined by fair interpretation of the entire text of the covenant.’ ” Stokes, 654 So.2d at 528 (quoting A.A. Home Improvement, 393 So.2d at 1336). What the language of the restriction in the.May deed shows is that the only items specifically restricted from being sold by the competition were motor fuels and petroleum products. The covenant did not restrict the sale of beer, tobacco, or any other items sold in a convenience store — it restricted the “operation of a convenience-type food store.” And selling some of the same items as a convenience store does not convert a business into a convenience store.
¶ 19. For example, when construing a restrictive covenant that prohibited the operation of a “liquor store,” the Texas Court of Civil Appeals found the fact that a convenience store sold beer and wine did not mean it was a “liquor store,” as that term is ordinarily understood. Wilson v. Golman, 563 S.W.2d 655, 656 (Tex.Civ.App.1978). And when construing a restrictive covenant that prohibited the operation of the same “type” of restaurant as a sit-down restaurant, which made its customers’ food to order, the Minnesota Supreme Court found that the fact that a McDonald’s offered some of the same menu items did not change the fact it was a fast-food restaurant. Snyder’s Drug Stores, Inc. v. Sheehy Props., Inc., 266 N.W.2d 882, 885-86 (Minn.1978).
¶ 20. Here, while the chancellor found M & A Grocery sold some of the same items as a convenience store — such as beer, tobacco, and snacks — this fact alone did not change the character of M <& A Grocery from a small specialty grocery store into a convenience store. Viewing the choice between BP Quickmart and M & A Grocery from the average consumer’s eyes, the chancellor found that “if [he] were driving by these two stores and wanted to buy convenience type items— chips, soft drinks, or gas — even though these items were available at M & A Grocery, [he] would surely go to BP Quick-mart. If [he] wanted to buy a piata, ... [he] would go to M & A Grocery.”
¶ 21. Thus, the chancellor concluded that M & A Grocery is not a convenience store, so it was not violating the restrictive covenant. As he supported this finding with substantial credible evidence, we find no abuse of discretion. We affirm the chancellor’s judgment denying Rawaid’s request for a permanent injunction against the operation of M & A Grocery.
¶ 22. THE JUDGMENT OF THE UNION COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
*123 LEE, C.J., IRyiNG AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, FAIR AND JAMES, JJ., CONCUR.