¶ 1. This case focuses on the violation of certain protective covenants, also referred to as restrictive covenants, applicable to the Bay Park Subdivision located in Rankin County, Mississippi, and was commenced by the filing of a complaint by James and Deborah Kolb against William and Carol Sullivan. The Kolbs and the Sullivans are adjoining property owners in the Bay Park Subdivision. The issue in the Kolbs's complaint which became the focus of the trial from the several violations which were originally asserted in the complaint was whether the Sullivans had violated the protective covenants when they placed a concrete pad and motor home cover on their lot.
¶ 2. In response to the complaint filed by the Kolbs, the Sullivans filed an answer and counter-claim. The counter-claim filed by the Sullivans alleged that the natural contour of the land, as well as the natural drainage of the surface water had been diverted on to their lot due to the Kolbs having modified their lot with fill dirt prior to the erection of their house. In turn the increased water drainage damaged the Sullivan's real property, boat house, seawall, and other structures.
¶ 3. The trial was held in the Chancery Court of Rankin County. The chancellor held that the motor home cover was in direct violation of certain protective covenants of the Bay Park Subdivision, and ordered the motor home cover be removed by the Sullivans at their costs within sixty days of the date of the judgment. Additionally, the chancellor held that relative to the counter-claim asserted by the Sullivans that no substantial evidence showed that additional flows of water from the Kolbs's property caused or contributed to damages to the Sullivans's real property and boat house. The chancellor dismissed the counter-claim with prejudice at the cost of the Sullivans. It is from this decision that the Sullivans appeal and present the following issue for this Court to decide: (1) whether the trial court erred in excluding evidence regarding the activities of the Pearl River Valley Water Supply District concerning interpretation and enforcement of the protective covenants of the Bay Park Subdivision, (2) whether the trial court erred in interpreting the language of the protective covenants in favor of restrictions upon the use of the land, and (3) whether the trial court erred in determining that the evidence did not justify an award of monetary damages in favor of the Sullivans on the basis of the counter-claim presented by said party.
 FACTS
¶ 4. In October of 1986, the Sullivans purchased Lot 33 in Bay Park Subdivision. In May of 1990, the Kolbs began construction of their current residence on Lot 34 within the Bay Park Subdivision. At that time, the Sullivans occupied their home on Lot 33 within the Bay Park Subdivision, which is an adjoining lot. The Sullivans and the Kolbs have been next door neighbors for approximately seven years.
¶ 5. In October of 1994, the Sullivans constructed a concreted pad on their lot near the common side lot line of the properties *Page 774 
of the Sullivans and Kolbs. This pad was placed on the Sullivans's lot for the purpose of parking their motor home. The evidence showed that the concrete pad extends above the surface of the ground four to five inches and is fifty-six feet long and twelve feet wide. At its closest point the concrete slab is 4.73 feet away from the property line of Lot 34 which is owned by the Kolbs. In April of 1995, the Sullivans erected a motor home cover over the aforementioned concrete slab. The motor home cover consisted of a gable-style roof supported by posts.
¶ 6. Prior to the erection of the motor home cover the Kolbs had expressed concern to the Sullivans relative to the placement of the concrete slab. Subsequently, the motor home cover was erected while the Kolbs were out of town. Upon the Kolbs return they discovered the newly erected motor home cover located on the Sullivans's Lot 33, and the Kolbs also discovered that the motor home cover was clearly visible from the front portion of their lot. Offended by the motor home cover, the Kolbs contacted both the Sullivans and the Pearl River Valley Water Supply District to determine if the motor home cover complied with the Bay Park Subdivision covenants. Pete Walker, an employee with the Pearl River Valley Water Supply District, determined that the Sullivans's motor home cover was in violation of the covenants and mailed a letter to William Sullivan and the Kolbs which notified the Sullivans of the violation. Despite repeated requests from the Kolbs, and the letter from Pete Walker notifying the Sullivans of the violation of the covenants, the Sullivans refused to disassemble the motor home cover. When the Sullivans refused to tear down the motor home cover the Kolbs pursued legal action and sought a mandatory injunction for its removal.
¶ 7. The Sullivans answered by denying that the motor home cover was in violation of the protective covenants, and they filed a counter-claim against the Kolbs which alleged that the Sullivans's real property and boat house had been damaged by an increased runoff of diffused surface water from the Kolbs's property. The Sullivans contended that the increased flow of surface water resulted from fill dirt imported during the construction of the Kolbs's home in 1990. The Sullivans sought monetary damages from the Kolbs to try and correct the problems associated with the surface water drainage and the damage to their real property and boathouse.
¶ 8. Testimony at the trial revealed that prior to the Sullivans obtaining ownership of the property, the previous owner had suffered destruction around the boathouse due to wave activity, beavers, and surface water runoff which had required him to take remedial measures in an attempt to stop the deterioration that was occurring on the property around the boathouse. All of this occurred before the Kolbs built their home on Lot 34. Additionally, experts testified that though there was surface water drainage coming from the Kolbs's lot unto the Sullivans, this water made a minimal contribution to the damage occurring on the Sullivans's property and boathouse.
¶ 9. The court heard this cause, beginning December 12, 1996. At the end of a day of trial, the case was continued until April 30, 1997. In the interim, on March 21, 1997, the parties, through counsel, and the court met at the subject properties for the court to inspect the same. The trial was concluded on May 1, 1997. The chancellor held that although there was evidence presented that other mobile home covers existed within the subject neighborhood, that this did not excuse, nor justify, the existence of the subject motor home cover. The chancellor held that the motor home cover was in violation of several protective covenants found in the Bay Park Subdivision residential covenants, and denied monetary damages to the Sullivans due to any alleged damages caused by surface water drainage from the Kolbs's property. *Page 775 
 STANDARD OF REVIEW
¶ 10. Before addressing each issue and the arguments presented within each one, this Court is mindful in reviewing the findings of the chancellor to determine whether an error was committed we must determine whether his findings amounted to an abuse of discretion, whether they were manifestly wrong, clearly erroneous or an erroneous legal standard was applied. Smith v. Jones,654 So.2d 480, 485 (Miss. 1995). As an appellate court, we may disturb the findings of the trial court only where the overwhelming weight of the credible evidence presented on the record goes against or is contrary to the findings of the chancellor. Smith v. McMurry, 539 So.2d 127, 129 (Miss. 1989).
 ISSUES I. WHETHER THE TRIAL COURT ERRED IN EXCLUDING EVIDENCE REGARDINGTHE ACTIVITIES OF THE PEARL RIVER VALLEY WATER SUPPLY DISTRICTCONCERNING THE INTERPRETATION AND ENFORCEMENT OF THE RESTRICTIVECOVENANTS OF THE BAY PARK SUBDIVISION.
 AND II. WHETHER THE TRIAL COURT ERRED IN INTERPRETING THE LANGUAGE OFTHE RESTRICTIVE COVENANTS IN FAVOR OF RESTRICTIONS UPON LAND USE.
¶ 11. The first issue presented by the Sullivans is whether the trial court erred in excluding evidence regarding the activities of the Pearl River Valley Water Supply District relative to the interpretation and enforcement of the protective covenants of the Bay Park Subdivision. The Sullivans argue that the trial court erred when it "excluded testimony relative to William S. Sullivan's attempts to determine the appropriate procedure for permit approval by the Pearl River Valley Water Supply District, and the advice of the district personnel that no such permit was needed." Additionally, the Sullivans argue that the chancellor erred in not allowing certain photographs of structures similar to the motor home cover into evidence to assist in making a determination on how the covenants had been interpreted. The Kolbs responded to the aforementioned arguments.
¶ 12. The Kolbs argue that the testimony of William Sullivan concerning what he was told by the employees at the district concerning the necessity of obtaining a permit and/or concerning the district's interpretation of the applicable protective covenants was properly excluded by the chancellor as hearsay, and the chancellor was within his discretion to determine that certain photographs would not be admitted into evidence due to the fact that they were outside the vicinity and were not relevant to the issue presented in the case at bar. The Sullivans further counter the Kolbs's argument in their reply brief.
¶ 13. The Sullivans contend that William Sullivan's discussions with employees of the Pearl River Valley Water Supply District should have been admitted under a hearsay exception established in the Mississippi Rules of Evidence. More specifically, the Sullivans argue that the chancellor could have admitted the aforementioned statements under Mississippi Rule of Evidence 803 (3) or, in the alternative, Mississippi Rules of Evidence 803 (1) or 406. This Court has reviewed the record and concludes that the chancellor was not in error in excluding any supposed statements made by employees of the Pearl River Valley Water Supply District. In fact, whether the employees instructed William Sullivan that there was no necessity of the submission of plans and a permit prior to the construction of the motor home cover is irrelevant. For the purpose of clarity in our discussion, it is necessary to discuss the questions presented by the Sullivans in issue two before addressing whether the chancellor was in error when he excluded the supposed *Page 776 
statements made by the employees of the Pearl River Valley Water Supply District.
¶ 14. Under issue two the Sullivans contend that the chancellor erred in determining there was no ambiguity in the language of the covenants and, therefore, there was a restriction on placing a motor home cover on Lot 33 which is owned by the Sullivans. The Sullivans argue that when the chancellor inquires into the interpretation and enforceability of protective covenants restrictions on a property owners's use of their real property "are not favored by the law" and will only be enforced if they are clear, specific and unambiguous. The Sullivans follow this argument with the contention that the protective covenants for Bay Park Subdivision are not clear and unambiguous and, therefore, the chancellor should have allowed extrinsic evidence to aid in the interpretation of the covenants.
The Kolbs argue that the law in Mississippi is clear relative to interpreting protective covenants, and correctly asserts that the law of Mississippi requires a protective covenant to be read in its ordinary sense. The court is to consider the entire document, as well as circumstances surrounding its development when ascertaining its meaning, purpose and intent. Stokes v. Boardof Directors of La Cav Imp. Co., 654 So.2d 524, 527 (Miss. 1995).
¶ 15. The particular sections whose interpretation are in issue are as follows:
 2.
 All lots in said Bay Park Subdivision shall be known and described as residential lots and no structure shall be erected, altered, placed or permitted to remain on any such lot or building plot other than one detached single family dwelling.
 3.
 No building erected on such lots shall be located nearer that thirty (30) feet from the front street line of such lots and no closer than ten (10) feet from each side line of said lot.
 4.
 No dwelling house shall be constructed on the said lot having an area of less than 1400 square feet of floor area under roof, exclusive of garages and carports whether attached or detached.
 7.
 Plans and specifications for all buildings shall be approved by the Reservoir Board or its agents, and no type of structure shall be erected on any of the lots of said subdivision without prior written approval of the plans and specifications, including a plot plan showing placement of improvements on the lot, by the Reservoir Board or its authorized agents.
The Sullivans object to how the terms "dwelling", "structure", "building", "dwelling house", and "improvement" are randomly used within the aforementioned restrictive covenants. The Sullivans assert that Mississippi law is in favor of the free and unobstructed use of real property. Kichen v. Layton,457 So.2d 343, 345 (Miss. 1984). Additionally, the Sullivans cite Kemp v.Lake Serene Property Owners Association, Inc., 256 So.2d 924, 926 (Miss. 1971), in which the Mississippi Supreme Court stated the following: "Generally courts do not look with favor on restrictive covenants. Such covenants are subject more or less to a strict construction and in the case of ambiguity, construction is usually most strongly against the person seeking the restriction and in favor of the person being restricted." While this Court agrees with these legal contentions, we disagree that the protective covenants were less than clear or ambiguous as to require the court to rely upon extrinsic evidence to determine the covenants proper construction. *Page 777 
¶ 16. "Where the language is clear and unambiguous, `protective covenants will not be disregarded merely because a use is prohibited or restricted.'" Stokes v. Board of Directors of La CavImp. Co., 654 So.2d 524, 528 (Miss. 1995). If the intent to prohibit or restrict the use of land is expressed in clear and unambiguous wording, enforcement is available in the courts of this State. Andrews v. Lake Serene Property Owners Association,Inc, 434 So.2d 1328, 1331 (Miss. 1983). The plain meaning of the words in issue are as follows:
 (1) building — Something that is built, as for human habitation; a structure — the act, process, art or occupation of constructing.
 (2) dwelling — a place to live in; an abode.
 (3) structure — Something made up of a number of parts that are held or put together in a particular way. — The way in which parts are arranged or put together to form a whole; makeup. — The interrelation or arrangement of parts in a complex entity. — Something constructed.
 (4) improvement — The act or process of improving. — The state of being improved. — A change or addition that improves; and,
 (5) house — A structure serving as a dwelling for one or more persons, esp. for a family.
THE AMERICAN HERITAGE COLLEGE DICTIONARY (3d ed. 1993). After having looked at the protective covenants and applying the plain language of the terms contained in the protective covenants this Court finds that the covenants are clear and unambiguous, and the chancellor was not in error in determining that the motor home cover was encompassed by the terms within said covenants. We find no reversible error by the chancellor. Having fully discussed the proper interpretation of the covenants, this Court will now address issue one and whether the chancellor committed an error when he excluded the testimony of William Sullivan relative to the statements made to him by the employees of the Pearl River Valley Water Supply District.
¶ 17. This Court has reviewed the record and the applicable protective covenants and finds that even if William Sullivan had been told by the employees of the Pear River Valley Water Supply District that the motor home cover did not necessitate a permit he would have still been in violation of the covenants for the Bay Park Subdivision. Therefore, whether the statements were hearsay or may have been admissible under another rule of evidence does not merit discussion.
¶ 18. Section three of the covenants states as follows: "No building erected on such lots shall be located nearer than thirty (30) feet from the front street line of such lots and no closer than ten (10) feet from each side line of said lot." Exhibit P-6 showed that the concrete pad and motor home cover constructed by the Sullivans were 4.73 feet away from the Kolbs's property line. Since this Court has already determined that the covenants were clear and unambiguous and encompassed the motor home cover in question, no extrinsic evidence is needed to determine there was a violation of section three. The distance of 4.73 feet was not disputed as incorrect by witnesses at the hearing in this matter, including those witnesses presented by the Sullivans. Additionally, the chancellor went to the respective lots and examined the alleged violation. The pad and motor home cover are clearly in violation of the minimum distance of ten feet enumerated in section three. It is also apparent on its face that the Sullivans failed to follow the guidelines established in section seven of the protective covenants.
¶ 19. Section seven states that "plans and specifications for all buildings shall be approved by the Reservoir Board or its agents, and no type of structure shall be erected on any of the lots of said subdivision without prior written approval of the *Page 778 
plans and specifications, including a plot plan showing placement of improvements on the lot, by the Reservoir Board or its authorized agents." At trial William Sullivan admitted that he had only had verbal discussions with the employees of Pearl River Valley Water Supply District relative to their plans to erect the motor home cover and never submitted any written plans for the cover. Additionally, William Sullivan admitted that he erected the structure without having first received a permit. Therefore, the Sullivans were in violation of section seven. Additionally, the Sullivans argue that the chancellor committed error when he failed to admit photographs of structures similar to the motor home cover in question.
¶ 20. The chancellor excluded several photographs from evidence; however, he did allow several photographs into evidence. On the basis of relevancy, the chancellor admitted photographs of structures similar to the Sullivans's motor home cover if they were within 100 yards of the Kolbs's property. The logic which this Court has applied to the relevancy of the statements made by the employees of the Pearl River Valley Water Supply District is also applicable to the admission of the photographs. The chancellor admitted those pictures he felt were relevant; however, the civil action was brought only against the Sullivans, and it was the Sullivans's motor home cover that was the issue of the subject litigation. The chancellor accurately determined that the Sullivans were in violation of the covenants and that similar to the statements made by employees of the Pearl River Valley Water Supply District and the activity of fellow neighbors did not have significant bearing on the dispute between the Kolbs and the Sullivans.
¶ 21. As a final point, the Sullivans argue that this Court should not require them to remove the motor home cover from their property. In Hall v. Wood, 443 So.2d 834, 841 (Miss. 1983), the Mississippi Supreme Court emphasized that a mandatory injunction is an equitable remedy. It must be customized to meet the needs of the situation. Id. It must be clear so that the party enjoined knows what he is expected to do or to refrain from doing. Id. It must be practical, in that the party being enjoined is capable of compliance without undue hardship and reasonably likely to achieve the desired end. Id.
¶ 22. The injunction ordered by the Court can be found in section nine of the judgment rendered by the chancellor and reads as follows: "The motor home cover, being in direct violation of the referenced protective covenants, should be and is ordered to be removed by Defendants at their costs within 60 days of the date of the judgment in this cause." This section clearly informs the Sullivans of what they are expected to do which is to remove the motor home cover. This Court finds that this can reasonably be done by the Sullivans and would achieve the end result desired by the Kolbs and the chancellor. This result being the removal of the large structure which is in violation of the protective covenants. The decision to issue the mandatory injunction was within the chancellor's discretion and this Court will not disturb his ruling.
III. WHETHER THE TRIAL COURT ERRED IN DETERMINING THAT THEEVIDENCE DID NOT JUSTIFY AN AWARD OF MONETARY DAMAGES IN FAVOR OFTHE SULLIVANS ON THE BASIS OF THE COUNTER-CLAIM PRESENTED BY SAIDPARTY.
¶ 23. The third assignment of error is that the trial court erred in determining that the evidence presented at trial did not justify an award of monetary damages in favor of the Sullivans based on the counter-claim presented by said party. The Sullivans argue that "[o]ne whose property has been injured by water, due to the wrongful act or negligence of another, may recover damages for the damages sustained." Lauck v. Gilbert, 252 Miss. 371, 393,173 So.2d 626, 637 (1965). The question *Page 779 
then becomes whether the Kolbs committed any "wrongful acts" or were "negligent" in draining surface water from their property.
¶ 24. The Kolbs argue that there was substantial evidence to support the chancellor's denial of damages to the Sullivans's real property and boathouse. The Kolbs further argued that the evidence presented established that they acted reasonably in minimizing any added volume of surface water flows caused by the construction of their house, and that any damages to the property of the Sullivans existed prior to the construction of their home and was caused by pre-existing conditions.
To support the evidence presented, and the chancellor's ruling the Kolbs cite Board of Drainage Com'rs of Drainage Dist. No.10 of Bolivar County v. Board of Drainage Com'rs of WashingtonCounty, 130 Miss. 764, 95 So. 75 (1923), where the Mississippi Supreme Court held that an upper land owner may reasonably drain surface waters from his land into the natural water course, and this may be done without the necessity of qualification or limit. If the increased flow of the surface water is more than the capacity of the stream, and it results in flooding or damaging the lower owner, such damage will be considered without legal injury and no right of action will lie.Id. The court continues to elaborate and stated, "We believe that in such a case where the upper or lower owner must necessarily suffer, it would be more reasonable and just to put the loss upon the lower owner, who, we may say, should have reasonably anticipated the drainage of the lands above him into the water course running through his land." Id. Although under our law the upper land owner shares privileges relative to the use of its property and in draining surface waters therefrom the law still requires that this use be reasonable. In most instances, a landowner has the right to reasonably improve and use his property for any legitimate purpose. Homes, Inc. v. Anderson,235 So.2d 680, 683 (Miss. 1970). However, an upper landowner is not allowed to unreasonably alter natural drainage patterns to the detriment of his lower neighbor. Hall v. Wood, 443 So.2d 834, 839 (Miss. 1983).
¶ 25. For the law to mandate an upper landowner to retain all waters coming onto his property from all sources, in particular rainfall, would not only require an impossibility, but would also impose an intolerable burden on the owners of upper lands in every water shed. Homes, Inc. v. Anderson, 235 So.2d 680, 683 (Miss. 1970). An upper landowner may increase the flow of water via drainage incident to the reasonable development of his property even though it does some damage to the lower landowner. Homes,Inc. v. Anderson, 235 So.2d 680, 682 (Miss. 1970); Shattles v.Field, Bracket Pitts, Inc., 261 So.2d 795, 797 (Miss. 1972);Payne v. Touchstone, 372 So.2d 1277, 1280 (Miss. 1979). "Water by its nature confers burdens as well as benefits. These burdens our law requires be shared equitably." Hall, 443 So.2d at 839. When any land owner diverts waters from his lands, he must use reasonable care to prevent unnecessary injury to adjoining landowners. Holman v. Richardson, 115 Miss. 169, 179, 76 So. 136, 137 (1917); Payne v. Touchstone, 372 So.2d 1277, 1279 (Miss. 1979). Numerous cases have held that upper landowners may not by artificial means discharge waters in greater quantities to the detriment of lower landowners. Steed v. Kimbrough, 197 Miss. 430, 436, 19 So.2d 925, 926 (1944).
¶ 26. In the case at bar, no artificial means were used to gather or discharge greater quantities unto the lower property owned by the Sullivans. The Kolbs had improved their lot in a reasonable manner. When an individual purchases property it is always reasonable to anticipate that the individual may erect a home on said property, especially, land located in a residential subdivision. In the course of building their house they used an *Page 780 
undetermined amount of fill dirt to level the land where the house was constructed. The Sullivans argue that it was the placement of this fill dirt that diverted water and caused a significant increase in the flow of surface water which damaged their real property and the boathouse. However, no testimony presented at the trial showed that the placement of the fill dirt on the Kolbs's land prior to building their house was unreasonable. In fact, there was evidence presented that even prior to the construction of the Kolbs's house, Lot 33, the lot owned by the Sullivans, suffered damage from surface water drainage, as well as activity around the Reservoir.
¶ 27. Mr. Rowell Billup Saunders was the previous owner of Lot 33 and was the individual who sold the lot to the Sullivans. Saunders owned the property prior to the construction of the Kolbs's house on Lot 34. Saunders's testimony at the trial showed that while he owned the property he had experienced drainage problems concerning the boathouse and portions of the real property surrounding the boathouse. Saunders testified that when it rained water would go underneath the storage areas of the boathouse and get everything wet. Additionally, Saunders testified that he had experienced problems similar to those the Sullivans were currently complaining about. Saunders testified that he had problems with seawall wash out and that holes appeared behind the seawall when he owned the property. Additionally, Saunders asserted that the damage appeared to have been caused by surface water drainage from the street, and a beaver had made a home around the boathouse. Furthermore, Saunders and engineers testified that wave action in the Reservoir had also contributed to this pre-existing problem around and to the boathouse. The testimony of Saunders and other engineers established that the boathouse was located at the lowest point between Lots 33 and 34, and that a natural drainage course existed which when it rained, the waters from both lots sought out as the drainage course. Mr. Saunders also testified that he had visited Lots 33 and 34 after the construction of the Kolbs's house and in his opinion there was no significant difference in the topography of either lot since he had moved in 1985. One of the registered civil engineers further supported the Mr. Saunders's contention to the topography when the engineer testified that the topography of Lot 34 had not changed significantly since before the house was built on Lot 34.
¶ 28. The chancellor heard all the evidence presented and in fact further inquired into matters where he felt clarity was needed. Additionally, the chancellor went to Lot 33 and Lot 34 to personally view the alleged problems posed between the adjacent property owners. It is well-established that findings of fact made by a chancellor "may not be disturbed or set aside on appeal unless manifestly wrong." Georgia Pacific Corp. v. Armstrong,451 So.2d 201, 204 (Miss. 1984). In light of the great discretion that is held by a chancellor, this Court finds that based on the evidence presented at the trial and the individual inquiries made by the chancellor he was not manifestly wrong in holding that there was no substantial evidence presented to show that the Kolbs had acted unreasonably or negligently and an award of monetary damages was warranted from the Kolbs to the Sullivans.
¶ 29. THE JUDGMENT OF THE RANKIN COUNTY CHANCERY COURT IS AFFIRMED.ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT
McMILLIN, C.J., KING AND SOUTHWICK, P. JJ., COLEMAN, DIAZ, IRVING, AND THOMAS, JJ., CONCUR.
BRIDGES AND PAYNE, JJ., NOT PARTICIPATING. *Page 781