# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2011-CT-01865-SCT

*JOEL MISITA*

*v.*

*ROY A. (AL) CONN AND MITZI P. CONN*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 10/25/2011 |
| TRIAL JUDGE: | HON. E. VINCENT DAVIS |
| TRIAL COURT ATTORNEYS: | KATIE W. FREIBERGER |
| | R. KENT HUDSON |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | R. KENT HUDSON |
| ATTORNEY FOR APPELLEES: | KATIE W. FREIBERGER |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART. THE JUDGMENT OF THE ADAMS COUNTY CHANCERY COURT IS REINSTATED AND AFFIRMED - 05/15/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Roy and Mitzi Conn filed suit in the Chancery Court of Adams County against their adjoining landowner Joel Misita, who had placed a structure on his land. The Conns sought to enforce a warranty deed restriction placed by their predecessors in title that prohibited Misita from erecting any "structures" on three acres of his land. The chancery court ruled

in favor of the Conns and ordered the removal of the structure. The Court of Appeals affirmed the Conns' authority to enforce the restrictive covenant but reversed the chancery court's determination that it was a structure. This Court granted the Conns' Petition for Writ of Certiorari. We affirm in part and reverse in part the judgment of the Court of Appeals and reinstate and affirm the judgment of the chancery court.

## FACTS AND PROCEDURAL HISTORY

¶2. Kevin and Rebecca Wilson owned a residence and approximately twenty-seven acres in Adams County. On November 16, 2007, the Wilsons deeded approximately three acres of the twenty-seven acres to Misita.[1] The conveyance consisted of unimproved property fronting Highway 61 in Adams County and adjoined Misita's existing seven acres, where Misita had constructed a sixty-two-feet-high, custom-built, three-story home.[2] There were also multiple outbuildings, sheds, and trailers on this property as well. Prior to the sale of the three acres, Kevin visited Misita and informed Misita that the deed would contain a provision "that no structures are to be erected on the property." Misita stated that such a provision was "fine," but now Misita alleges he understood Wilson's request to encompass only structures like his sixty-two-feet high home. The warranty deed conveyed to Misita from Wilson contained a provision which provided, *inter alia*, that "[n]o structures are to be erected on the property."

---

[1]Misita is an artisan and builds custom metal items for clients.

[2]Misita built his home. The first floor of that structure serves as his metal shop and is much higher than a standard three-story building.

¶3.     On June 19, 2008, the Wilsons sold their remaining acreage and home, which was appraised for $850,000, to Al and Mitzi Conn. Prior to the sale, Kevin informed the Conns that the three acres of Misita's property fronting Highway 61 were subject to a scenic easement and no structures could be placed on the property. Al later reviewed the deed from Wilson to Misita to confirm the "no-structure" provision prior to purchasing the property. The Conns testified that the restrictive covenant played a major role in their decision to purchase the property, as it prevented the three-acre frontage portion of Misita's property from becoming "junked-up" like the rest of Misita's property. The warranty deed conveying the property did not include the restrictive covenants placed on Misita's land. After the Conns purchased the Wilson property, Misita informed the Conns that he planned to build a "sign" and display it on the three acres. Despite verbal and written objection from Al Conn, Misita constructed the structure at issue and placed it on the three acres.

¶4.     Although the parties and the chancellor referred to Misita's creation as a "sign," after reviewing the record and photographs, we reach the conclusion that it is a structure with signage. It is a three-sided structure with a floor and a corrugated metal roof. It is constructed of metal and wood. It is triangular in shape and connects to three poles that form a frame, with two wheels. Each side is eighteen feet in length.[3] The height is approximately fifteen feet, and the structure is capable of being raised higher. Exterior steps and a landing are attached to the back side. Two sides of the structure serve as illuminated signage. Each of those two sides contains four exterior lights that extend outward from the roofline a few feet and hang down, resembling street lamps. On the remaining side, the back side, a single

---

[3]The structure is eighteen by eighteen by eighteen feet.

light illuminates the door and exterior steps used for entry. The door may be locked by key and has glass window panes. An aerial power line provides electricity to the interior of the structure, in addition to the outside lighting. The interior is approximately 140 square feet. It is a fully-enclosed room,[4] complete with a floor and a roof. The room is air-conditioned and serves as a showroom for some of Misita's works. Although wheels are attached, the structure has not been moved since Misita placed it in its current position, by fitting and cross-bolting the frame into permanently attached receptors set by concrete into the ground.

¶5.     On March 24, 2011, the Conns filed suit. A trial was held on September 27, 2011. On October 25, 2011, the chancellor entered a judgment in favor of the Conns and ordered the removal of Misita's "sign." Misita appealed, and we assigned the case to the Court of Appeals. Misita asserted the following issues before the Court of Appeals: (1) whether the Wilson-Misita deed restriction is a real covenant that runs with the land; and (2) whether the restriction is so ambiguous and indefinite as to be unenforceable. *Misita v. Conn*, 2013 WL 2302945, **1-4 (Miss. Ct. App. May 28, 2013). The Court of Appeals defined "structure" as "something built or constructed, as a building, bridge, or dam." *Id.* at *3 (quoting *Random House Webster's Unabridged Dictionary* 1887 (2nd ed. 2001)). The Court of Appeals opined that the "sign" was not a structure, as it was neither a building, a bridge, or a dam, and that it was more akin to a "vehicle." *Id.* The Conns filed a petition for writ of certiorari, which this Court granted.

## ISSUES

---

[4]The interior of the structure is equal to a ten-feet-by-fourteen-feet- square room.

4

¶6.    We address the following two issues:

I.    Whether the restriction runs with the land.

II.    Whether Misita's sign is a structure.

## STANDARD OF REVIEW

¶7.    "The Supreme Court reviews the trial court's findings of fact under the manifest-error/substantial-evidence standard." *Long Meadow Homeowners' Ass'n, Inc. v. Harland*, 89 So. 3d 573, 577 (Miss. 2012). However, "questions concerning the construction and interpretation of contracts are questions of law," which we review de novo. *Royer Homes of Mississippi, Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 751 (Miss. 2003).

## DISCUSSION

### I.    The restriction runs with the land.

¶8.    Before the Conns, as subsequent purchases of the Wilson property, can seek to enforce the restrictive covenant at issue, the covenant must "run with the land." A covenant will "run with the land" if three conditions are met: "(1) the covenanting parties must intend to create such covenant; (2) privity of estate must exist between the person claiming right to enforce the covenant and the person upon whom burden of covenant is to be imposed; and (3) the covenant must 'touch and concern' the land in question." *Hearn v. Autumn Woods Office Park Prop. Owners Ass'n*, 757 So. 2d 155, 158 (Miss. 1999) (citing *Vulcan Materials Co. v. Miller*, 691 So. 2d 908, 913 (Miss. 1997)). A covenant that runs with the land "is not void merely because it is not referred to in any deed conveyed to subsequent owners." *Hearn*, 757 So. 2d at 158-59. "[A] real covenant [that runs with the land] creates

5

a servitude upon the realty (the servient estate) for the benefit of another parcel of land (the dominant estate)." *Miller*, 691 So. 2d at 913.

¶9. In the case *sub judice*, the chancellor found that the covenant runs with the land based on "the nature of the covenant or restriction itself."[5] We find no error in the chancellor's conclusion. The chancellor found that Kevin Wilson told the Conns about the restriction and that Misita sought permission to erect the structure from the Conns. Privity of estate exists, as the Conns purchased the dominant land from the Wilsons with notice of the restrictive covenant. *See* **Clement v. R. L. Burns Corp.**, 373 So. 2d 790, 794 (Miss. 1979) (holding that "[p]rivity implies succession. He who is in privity stands in the shoes or sits in the seat of the owner from whom he derives his title"). Finally, the covenant "touches and concerns"[6] the land, as it imposes a burden on the use and enjoyment of the land. *Miller*, 691 So. 2d at 914. Thus, the Conns possess the right to seek enforcement of the restrictive covenant.

## II. Misita's "sign" is a structure.

---

[5]Similar restrictive covenants have been met with approval. *Harland*, 89 So. 3d at 575 ("no structure could be erected, placed or permitted to remain on any lot other than one single family residential structure"); *Hearn*, 757 So. 2d at 156 (easement "shall be perpetual and irrevocable"); **Stokes v. Bd. of Directors of La Cav Imp. Co.**, 654 So. 2d 524, 525 (Miss. 1995) ("no buildings, structures, outbuildings or any other improvements shall be erected on the property conveyed except . . . a pier."); **Kinchen v. Layton**, 457 So. 2d 343, 345 (Miss. 1984) ("[n]o structure of a temporary character, basement, tent, shack, garage, or other outbuilding shall be placed upon or used on any lot at any time for purpose either temporarily or permanently.")

[6]"It has been said that to meet this requirement, the covenant must be so related to the land as to enhance its value and confer a benefit upon it, or, conversely, impose a burden on it." *Miller*, 691 So. 2d at 914 (citing 20 Am. Jur. 2d *Covenants, Conditions, and Restrictions* § 15 (1995)). Or, "a covenant must bear upon the use and enjoyment of the land." *Miller*, 691 So. 2d at 914.

6

¶10.    Accordingly, we now analyze whether the object of this dispute is a structure or not. "Generally, courts do not look with favor on restrictive covenants." *Kemp v. Lake Serene Prop. Owners Ass'n, Inc.*, 256 So. 2d 924, 926 (Miss. 1971). "Such covenants are subject more or less to a strict construction and in the case of ambiguity, construction is usually most strongly against the person seeking the restriction and in favor of the person being restricted." *Id.* "An important corollary rule, however, is that the clear and unambiguous wording of protective covenants will not be disregarded merely because a use is prohibited or restricted." *Andrews v. Lake Serene Prop. Owners Ass'n*, 434 So. 2d 1328, 1331 (Miss. 1983). "If the intent to prohibit or restrict be expressed in clear and unambiguous wording, enforcement is available in the courts of this state." *Id.* "The language of restrictive covenants is to be read 'in its ordinary sense,' considering the entire document as well as the circumstances surrounding its formulation to ascertain its meaning, purpose and intents." *Stokes*, 654 So. 2d at 527.

¶11.    Both the circumstances and the plain language of the deed evidence that the word "structure" is clear and unambiguous and has broader application than sixty-two-feet-high buildings. "A reviewing court is concerned with what the contracting parties have said to each other, not some secret thought of one not communicated to the other." *Royer Homes*, 857 So. 2d at 752 (quoting *Turner v. Terry*, 799 So. 2d 25, 32 (Miss. 2001)). Therefore, the language of the restriction should be read in its "ordinary sense."

¶12.    We find that Misita's "sign" is a "structure." It is a one-room structure, complete with roof, floor, air conditioning, lights, door with window panes, and a staircase, *inter alia*. While not a bridge or dam, it is akin to a building or edifice, and is clearly "something built

7

or constructed."[7] Despite its adaptability for transport, it had not been moved since Misita erected it. The chancellor, who physically inspected the structure, found that it "is anchored to pipes which are sunk in the ground and Misita further secured the pipes by concrete."

¶13.     Black's Law Dictionary defines a structure as "[a]ny construction, production, or piece of work artificially built up or composed of parts purposefully joined together." *Black's Law Dictionary* 1464 (8th ed. 2004). In **Sullivan v. Kolb**,[8] the Court of Appeals defined "structure" as "[s]omething made up of a number of parts that are held or put together in a particular way. —The way in which parts are arranged or put together to form a whole; makeup.—The interrelation or arrangement of parts in a complex entity.—Something constructed." **Sullivan v. Kolb**, 742 So. 2d 771, 777 (Miss. Ct. App. 1999) (citing *The American Heritage College Dictionary* (3d ed. 1993)). It is a structure under both Black's and **Sullivan**, as it is "composed of parts purposely joined together." We find no error in the chancellor's finding.

## CONCLUSION

¶14.     The object of this dispute is a structure. Therefore, the chancellor did not err in finding that it violated the provision "that no structures are to be erected on this property." While we affirm the Court of Appeals' judgment that the restrictive covenant is enforceable,

---

[7]The limitation that the Court of Appeals put upon the example of a structure is not consistent with its common usage, for there are many structures that do not qualify as a building, dam, or bridge, e.g., the Washington Monument, the Statue of Liberty, or the Great Sphinx, *inter alia*.

[8]In **Sullivan**, the Court of Appeals found that a "motor home cover consist[ing] of a gable-style roof supported by posts" violated a protective covenant prohibiting the erection of any "structure[s]" other than a single-family dwelling. **Sullivan v. Kolb**, 742 So. 2d 771, 774-777 (Miss. Ct. App. 1999)

we reverse the judgment of the Court of Appeals that the "sign" is not a structure, and we reinstate and affirm the judgment of the Chancery Court of Adams County.

¶15.    **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART.  THE JUDGMENT OF THE ADAMS COUNTY CHANCERY COURT IS REINSTATED AND AFFIRMED.**

**WALLER, C.J., DICKINSON, P.J., LAMAR, KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR**.