# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-CA-01027-SCT

*LES SMITH*

*v.*

*ELIZABETH BROCKWAY AND REBECCA BROCKWAY*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/18/2023 |
| TRIAL JUDGE: | HON. VICKI B. DANIELS |
| TRIAL COURT ATTORNEYS: | THOMAS ALAN WOMBLE, JR. |
| | BOBBY T. VANCE |
| COURT FROM WHICH APPEALED: | PANOLA COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | THOMAS ALAN WOMBLE, JR. |
| ATTORNEY FOR APPELLEES: | BOBBY T. VANCE |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 11/14/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE RANDOLPH, C.J., COLEMAN AND CHAMBERLIN, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     The Panola County Chancery Court denied Les Smith's petition for injunction and declaratory relief against Elizabeth and Rebecca Brockway.  Smith sought to enjoin the Brockways from installing a manufactured home on their property allegedly in violation of restrictive covenants.  The chancellor found that the restrictive covenants were unenforceable as to the Brockways' property since the original grantor failed to sign the covenants as the covenants themselves required.

¶2.     Smith appealed the chancellor's denial, arguing that the grantor's signature on the property's original warranty deed was sufficient to trigger the restrictive covenants since the

covenants were attached to the deed, the deed referenced the covenants, and the documents were filed together. In line with the chancellor's ruling, the Brockways argue the restrictive covenants are unenforceable because the original grantor of their property failed to sign them. Accordingly, the Brockways contend the restrictive covenants were never properly attached to the land, were never accepted by the original grantees, and, therefore, have never been effective.

¶3.     We affirm.

## FACTS

¶4.     Rainmaker's Development Company, Inc., developed the Lakewood Village Subdivision. Frank J. Steed, the original president of Rainmaker's, conveyed a parcel of land, Lot 13, to the original grantees via a warranty deed with unsigned restrictive covenants referenced and attached.

¶5.     On April 20, 2023, Elizabeth Brockway and Rebecca Brockway purchased Lot 13 from Cheap Home Finders, Inc. Cheap Home Finders conveyed Lot 13 to the Brockways via a quitclaim deed. The quitclaim deed was signed by the president at the time of Cheap Home Finders, Jeremy Weaver, as the grantor of Lot 13; attached to the quitclaim deed was a document containing the twelve restrictive covenants labeled at the top: "Restrictive Covenants of Lakewood Village Phase I-II" and "Rainmaker's Development Company, Inc." underneath. The restrictive covenants are dated "Nov. 4 '91" and time-stamped 3:35 p.m.

¶6.     Les Smith, a resident of the subdivision, filed a petition for injunction and declaratory relief to prevent the Brockways from installing a preconstructed home or mobile home on

Lot 13, contending that such an act would violate the subdivision's restrictive covenants. The restrictive covenant Smith cited to support his proposition states: " 9. (Structures) No.[] house, trailers, mobile homes, pre-constructed buildings or campers may be allowed on said lots. All structures shall be sightly, of a character to enhance the value of the property. All proposed structures must first be approved by the developer or his assigns." Smith's motion for injunction claimed the restrictive covenants were valid, arguing that they expressly stated they would run with the land, that they had not expired or been changed, and that they had not been declared void by a majority of owners as the covenants instruct must be done to seek revocation.

¶7.     The chancellor denied Smith's motion to enjoin, finding that the restrictive covenants for Lot 13 were unenforceable and had never been enforceable. In determining whether the covenants were valid, the chancellor looked at the document containing the restrictive covenants as a whole, as is done in contract construction. She concluded that covenant number eleven created a condition precedent that required the document to be dated and signed to become a valid contractual agreement; it states: "These restrictions shall run with the land and shall be binding on all parties and all persons claiming through them for a period of twenty (20) years *from the date these restrictions are hereinafter dated and signed*." (Emphasis added.)

¶8.     As such, the chancellor found that the restrictive covenants never began to run because the drafter of the covenants and the original grantor of the parcel, Steed, dated the covenants but failed to sign them. Therefore, Steed, as the original grantor failed to present

a valid contractual obligation to the grantees, the grantees never validly accepted the restrictive covenants by completion of the warranty deed, and, ultimately, the restrictive covenants were never properly attached to Lot 13. Smith appealed.

¶9. On appeal, Smith asserts that the chancellor erred by finding the restrictive covenants unenforceable. The crux of Smith's argument is that the rules of contract construction apply to create valid covenants since the restrictive covenants were attached to the original warranty deed of Lot 13 and the warranty deed was properly signed by the grantor, rendering the covenants signed. He next argues that the valid restrictive covenants ran with the land, that privity of estate existed between the covenanting parties, and that the covenants touch and concern Lot 13. He also purports that the restrictive covenants meet all the requirements to be valid since their intent is clear throughout the terms set within them and that the restrictive covenants themselves are clear and unambiguous. Further, Smith argues that all Lot 13 purchasers had notice of the covenants and took it subject to them.

¶10. On the other hand, the Brockways argue on appeal that the chancellor did not err by finding the Lot 13 restrictive covenants unenforceable; simply attaching the unsigned restrictive covenants to the original warranty deed, they argue, was insufficient to trigger their enforceability since covenant number eleven required the grantor to date and sign the restrictive covenants to become enforceable. Specifically, the Brockways argue the covenants (1) are subject to the Statute of Frauds; (2) are void for impossibility because Steed is deceased and left no assigns, so it is impossible to obey the covenants, several of which

4

require the developer or his assigns' approval; and (3) are unenforceable because there is no homeowners association.

¶11. We affirm the chancellor's denial of Smith's motion to enjoin since the grantor failed to sign the restrictive covenants evincing a lack of intent to create covenants that run with the land.

## STANDARD OF REVIEW

¶12. The Mississippi Supreme Court reviews the trial court's findings of fact in actions determining the enforcement of restrictive covenants under the manifest error and substantial evidence standard. *Misita v. Conn*, 138 So. 3d 138, 141 (¶ 7) (Miss. 2014). Additionally, the Court considers questions of law concerning the construction and interpretation of contracts *de novo*. *Id.* The trial court will be found to have committed manifest error in its findings if they were the product of prejudice, bias, or fraud, or if they were manifestly against the weight of the credible evidence. *McQuirter v. Archie*, 311 So. 3d 1147, 1150 (¶ 8) (Miss. 2020).

## DISCUSSION

I. **Whether the chancellor erred by finding the restrictive covenants unenforceable**.

¶13. The chancellor properly denied Smith's motion to enjoin the Brockways. The plain language of the restrictive covenants read together required the original grantor to date and sign the restrictions to trigger their enforceability, and Steed failed to sign them. Steed's failure to sign the restrictive covenants indicates that he did not intend to create such

restrictive covenants that would run with the land.  As such, the restrictive covenants are unenforceable as to Lot 13.

¶14.  To "run with the land," a covenant must provide (1) an intent to create such a covenant, (2) privity of estate between the covenanting parties, and (3) the covenant touches and concerns the land. *Misita*, 138 So. 3d at 141 (¶ 8) (internal quotation marks omitted) (quoting *Hearn v. Autumn Woods Office Park Prop. Owners Ass'n*, 757 So. 2d 155, 158 (Miss. 1999)).  Additionally, to ascertain the meaning, purpose, and intent of restrictive covenants, their language "is to be read 'in its ordinary sense,' considering the entire document" and the circumstances regarding their formulation. *Stokes v. Bd. of Dirs. of La Cav Imp. Co.*, 654 So. 2d 524, 527 (Miss. 1995) (quoting *City of Gulfport v. Wilson*, 603 So. 2d 295, 299 (Miss. 1992)).  To determine the intent of the parties, we have held that the intentions of the parties, as shown by the agreement, governs and is determined by a fair interpretation of the entire text of the covenant. *Id.* at 528 (citing *A.A. Home Improvement Co. v. Hide-A-Way Lake*, 393 So.2d 1333, 1336 (Miss. 1981)).  Courts generally disfavor restrictive covenants, so the Court views their construction more strongly against the person seeking the restriction and in favor of the person being restricted when there is ambiguity. *Id.* at 527.

¶15.  Here, the language of the restrictive covenants is unambiguous:  "These restrictions shall run with the land and shall be binding on all parties and all persons claiming through them for a period of twenty (20) years from the date these restrictions are hereinafter dated and signed."  A fair interpretation of the restrictive covenants and reading the restrictive

covenants in their ordinary sense requires that the restrictive covenants be signed and dated by the grantor to run with the land. *Id.* at 528.

¶16.    The restrictive covenants required the grantor's signature to become enforceable and run with the land; thus, the first element necessary to create valid restrictive covenants that run with the land, intent to create a covenant, is unmet. *Mistia*, 138 So. 3d at 141 (¶ 8). Since the grantor, Steed, failed to sign the restrictive covenants as they required, no indication exists that he intended to create restrictive covenants that would run with the land. If Steed intended to create the restrictive covenants that ran with the land, he would have signed them so that they would have become enforceable. It cannot be concluded that Steed intended for the restrictive covenants to run with the land because he failed to meet all the elements required to do so.

¶17.    Because Steed, as the original grantor, failed to sign the document containing the restrictive covenants, the restrictive covenants are not and were never enforceable. As such, there is no grounds to hold that the chancellor manifestly erred by finding that the covenants were unenforceable and by denying Smith's motion to enjoin the Brockways from installing a manufactured home on their property.

**CONCLUSION**

¶18.    The chancellor properly denied Smith's petition for injunction and declaratory relief against the Brockways by finding that the Lakewood Village Subdivision's restrictive covenants were unenforceable. As provided by the unambiguous language of the restrictive covenants and when reading them in their ordinary sense, the covenants were required to be

dated and signed by the grantor before they were to begin running, and the grantor failed to

do so.

¶19.    **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**